IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

**July 6, 1998**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellee | ) | FILED: JULY 6, 1998 |
| | ) | |
| V. | ) | SHELBY COUNTY |
| | ) | |
| | ) | HON. JOSEPH B. DAILEY, |
| HOWARD E. KING | ) | JUDGE |
| | ) | |
| Appellant | ) | NO. 02-S-01-9703-CR-00021 |

For Appellant:                                    For Appellee:

A. C. WHARTON, JR.                        JOHN KNOX WALKUP
Public Defender                                Attorney General and Reporter

WALKER GWINN                               MICHAEL E. MOORE
Assistant Public Defender                Solicitor General
Memphis, Tennessee

                                                        LINDA A. ROSS
                                                        Associate Solicitor General
                                                        Nashville, Tennessee

                                                        WILLIAM L. GIBBONS
                                                        District Attorney General

                                                        DAVID C. HENRY
                                                        Assistant District Attorney
                                                        Memphis, Tennessee

OPINION

AFFIRMED                                                              BIRCH, J.

We granted permission to appeal under Tenn. R. App. P. 11 to Howard E. King, the appellant, in order to address the constitutionality of Tenn. Code Ann. § 40-35-201(b)(2) (Supp. 1994),[1] which requires trial courts to instruct juries regarding parole and release eligibility when a jury instruction on the sentencing range is requested by either party. Because we find that the statute does not violate the separation of powers doctrine or deprive the appellant of his due process right to a fair trial, we conclude that the statute, as applied under the circumstances of this case, is constitutional.

I

The appellant was indicted on a single count of aggravated burglary.[2] The State filed a notice of intent to seek enhanced punishment pursuant to Tenn. Code Ann. § 40-35-202 (1990),

_____

[1]On May 1, 1998, Tennessee's General Assembly passed Public Chapter No. 1041, an amendment to § 40-35-201 which deletes subsection (b) in its entirety and substitutes the following:

> In all contested criminal cases, except for capital crimes which are governed by the procedures contained in TCA §§ 39-13-204 and 39-13-205, and as necessary to comply with Article VI, Section 14 of the Constitution of the State of Tennessee and TCA § 40-35-301, the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser included offenses.

This amendment will apply to all trials occurring after the act's effective date.

[2]One commits aggravated burglary who unlawfully enters a habitation without consent of the owner with intent to commit theft. Tenn. Code Ann. §§ 39-14-402 and 403 (1991). Aggravated burglary is a Class C felony. Id.

on the grounds that the appellant is a persistent offender.  Under

Tenn. Code Ann. § 40-35-107(c)(1990), a persistent offender faces

a Range III sentence, which prescribes a more lengthy sentence than

does Range I, the shorter sentencing range for standard offenders.

Prior to trial, the appellant filed a motion requesting

the trial court to instruct the jury on the range of punishment for

aggravated burglary and all lesser included offenses, pursuant to

Tenn. Code Ann. § 40-35-201(b)(1).[3]  At the same time, however, he

---

[3]Tennessee Code Annotated § 40-35-201(b) provides:

> (b)(1) In all contested criminal cases,
> except for capital crimes which are governed
> by the procedures contained in §§ 39-13-204
> and 39-13-205, upon the motion of either
> party, filed with the court prior to the
> selection of the jury, the court shall charge
> the possible penalties for the offense charged
> and all lesser included offenses.

> (2)(A)(i) When a charge as to possible
> penalties has been requested pursuant to
> subdivision (b)(1), the judge shall also
> include in the instructions for the jury to
> weigh and consider the meaning of a sentence
> of imprisonment for the offense charged and
> any lesser included offenses.  Such
> instruction shall include an approximate
> calculation of the minimum number of years a
> person sentenced to imprisonment for the
> offense charged and lesser included offenses
> must serve before reaching such person's
> earliest release eligibility date.  Such
> calculation shall include such factors as the
> release eligibility percentage established by
> § 40-35-501, maximum and minimum sentence
> reduction credits authorized by § 41-21-236
> and the governor's power to reduce prison
> overcrowding pursuant to title 41, chapter 1,
> part 5, if applicable.

> (ii) Such instructions to the jury shall
> also include a statement that whether a
> defendant is actually released from
> incarceration on the date when such defendant
> is first eligible for release is a

requested the trial court to refrain from instructing the jury on parole eligibility, as required by Tenn. Code Ann. § 40-35-201(b)(2) whenever an instruction is given under (b)(1). The trial court granted the motion to instruct as to range of punishment, but denied the motion to exclude an instruction on parole eligibility.

The case was thereafter tried, and at the conclusion of all the proof, the jury was instructed as follows:

> The jury will not attempt to fix any punishment or sentence for these offenses. However, for your information only, you are informed that the ranges of punishment as to the offenses are as follows:
>
> AGGRAVATED BURGLARY-- imprisonment for not less than three (3) nor more than fifteen (15) years.
>
> You are further informed that the minimum number of years a person

---

discretionary decision made by the board of paroles based upon many factors, and that such board has the authority to require the defendant to serve the entire sentence imposed by the court.

(B) On an annual basis, the department of correction shall provide each judge exercising criminal trial court jurisdiction with the approximate calculation required in subdivision (2)(a). Such calculation shall be broken down to show the effect of each factor used in making such calculation. If the calculation provided by the department to the judges changes because of a change in the law or correctional policy, court intervention, the governor's prison overcrowding policy or any other such circumstance, the department shall send a revised calculation to the judges as such changes occur.

4

sentenced to imprisonment for these
offenses must serve before reaching
the earliest release eligibility
date (RED) is:

AGGRAVATED BURGLARY

3 YEARS

| | |
|---|---|
| RED% | 30% |
| RED% APPLIED | 0.90 yrs |
| W/MAX CREDITS | 0.59 yrs |
| SAFETY VALVE | 0.54 yrs |
| SAFETY VALVE & MAX CREDITS | 0.35 yrs |

Whether a defendant is actually
released from incarceration on the
date when first eligible for release
is a discretionary decision made by
the Board of Paroles and is based on
many factors. The Board of Paroles
has the authority to require a
defendant to serve the entire
sentence imposed by the Court.

The jury found the appellant guilty of aggravated burglary. After a sentencing hearing, the trial court sentenced him as a Range III persistent offender to thirteen years in the Department of Correction. The Court of Criminal Appeals affirmed the judgment of the trial court.

II

The appellant contends that Tenn. Code Ann. § 40-35-201(b)(2) violates two constitutional principles: separation of powers and due process.[4] As questions of law, we review these

---

[4]In his application for permission to appeal, the appellant also made a passing assertion that Tenn. Code Ann. § 40-35-201(b)(2) violated his right to an impartial jury under Tenn. Const. Art. I, § 9. However, the jury instruction given under (b)(2) did not contain anything that would cause the jury to be biased or prejudiced against the appellant. This assertion is

5

constitutional issues <u>de novo</u> with no presumption of correctness.

See <u>State v. Winningham</u>, 958 S.W.2d 740, 742-43 (Tenn. 1997); <u>State</u>

<u>v. Lewis</u>, 958 S.W.2d 736, 738 (Tenn. 1997).


A


We first address the separation of powers issue.
Article II, § 1 of the Tennessee Constitution provides:

> The powers of the Government shall
> be divided into three distinct
> departments:   the Legislative,
> Executive, and Judicial.


Article II, § 2 provides:

> No person or persons belonging to
> one of these departments shall
> exercise any of the powers properly
> belonging to either of the others,
> except in the cases herein directed
> or permitted.


The separation of powers doctrine arises from the precept that
"[i]t is essential to the maintenance of republican government that
the action of the legislative, judicial, and executive departments
should be kept separate and distinct."  <u>Richardson v. Young</u>, 122
Tenn. 471, 492, 125 S.W. 664, 668 (1910).  The Court of Appeals has
summarized the doctrine as follows:

> In general, the "legislative power"
> is the authority to make, order, and
> repeal law; the "executive power" is
> the authority to administer and

without merit.

> enforce the law; and the "judicial
> power" is the authority to interpret
> and apply law. The Tennessee
> constitutional provision prevents an
> encroachment by any of the
> departments upon the powers,
> functions and prerogatives of the
> others. The branches of government,
> however, are guided by the doctrine
> of checks and balances; the doctrine
> of separation of powers is not
> absolute.

State v. Brackett, 869 S.W.2d 936, 939 (Tenn. Crim. App. 1993) (citations omitted). Thus, while the three branches of government are independent and co-equal, they are to a degree interdependent as well, with the functions of one branch often overlapping that of another. Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975). "[B]ecause the defining powers of each department are not always readily identified, recognizing an encroachment by one department upon another is sometimes difficult." Summers v. Thompson, 764 S.W.2d 182, 189 (Tenn.)(Drowota, J., concurring) cert. dismissed, 488 U.S. 977, 109 S. Ct. 523, 102 L. Ed.2d. 556 (1988).

According to the appellant, the Tennessee Legislature violated the separation of powers doctrine by enacting Tenn. Code Ann. § 40-35-201(b)(2), which, he contends, improperly encroaches upon the judicial function of determining the law appropriate for jury consideration in each case. Essentially, by enacting Tenn. Code Ann. § 40-35-201(b)(1) & (2) the legislature has deemed sentence and parole information relevant to the determination of guilt or innocence. Yet, a trial judge is obligated, as part of the judicial function, to afford a fair trial by determining relevancy on a question-by-question basis. Moreover, relevance is

7

controlled by the Tennessee Rules of Evidence. A legislative predetermination of relevancy, then, suggests a collision between the judicial and legislative functions.

However, we have previously recognized that the first subsection of the same statute, which provides for a range of punishment instruction when requested by either party, is a proper exercise of the legislative function. Tenn. Code Ann. § 40-35-201(b)(1); State v. Cook, 816 S.W.2d 322, 326-27 (Tenn. 1991). The addition of information on the shortest length of time a defendant may serve is merely a refinement on that instruction. Admittedly, the statute constitutes an overlapping of the legislative power with that of the judiciary, and it may indeed be close to an improper infringement. Yet, having already acknowledged the authority of the legislature to provide a range of punishment instruction, we must also acknowledge that an explanation of the reality of early release and parole is no further an encroachment into the judicial function. The jury must still decide the issue of guilt or innocence, and the trial court must still decide the ultimate sentence to be imposed. Therefore, we conclude that Tenn. Code Ann. § 40-35-201(b)(2) does not violate the Separation of Powers Clauses of the Tennessee Constitution.

B

Next, we consider the appellant's assertion that his right to due process was violated. Article I, § 8 of the Tennessee Constitution provides:

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

The Fourteenth Amendment, § 1, to the United States Constitution provides:

> [N]or shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The appellant contends that Tenn. Code Ann. § 40-35-201(b)(2) deprived him of the due process right to a fair trial in three ways: (1) the statute is impermissibly vague, (2) the statute requires a misleading jury instruction, and (3) the statute requires a jury instruction on matters irrelevant to a defendant's guilt or innocence.

Turning to the vagueness question, the appellant relies on Farris v. State, 535 S.W.2d 608 (Tenn. 1976), to support his contention that this provision is unconstitutionally vague and impossible to apply. In Farris, two members of the Court found that a statute requiring jury instruction on parole eligibility, the powers and duties of the Board of Pardons and Paroles, the effect of a prisoner's good behavior, and the allowance of good

time credits was unconstitutionally vague.[5]  Id. at 612-13.  That statute provided:

> It shall be the further duty of the trial judge charging jurors in cases of criminal prosecutions for felony offenses to charge the said jury as to the provisions of this section and as to the provisions of §§ 40-3612, 40-3613, 41-332 and 41-334, wherever applicable.

Tenn. Code Ann. § 40-2707 (1975).

The difference between the above statute and Tenn. Code Ann. § 40-35-201(b)(2) is readily apparent.  An instruction given pursuant to § 40-2707 provided no reasonable guidance as to the ramifications of the parole system in any particular case, other than to suggest that at some future date the defendant may receive the benefits of parole.  A jury was simply supplied with a mass of general information, in the form of a statutorily-derived narrative concerning the operation and possible effects of the parole system, and was left to decipher that information and compute the length of time a defendant would serve as best it could.  In contrast, Tenn. Code Ann. § 40-35-201(b)(2) does not leave a jury to speculate about release eligibility dates, good time credits, and safety valve release provisions.  Rather, it requires the experts at the Department of Correction to compute the figures so that the jury is supplied with concrete, specific figures reflecting application of the various factors relevant to release eligibility.  Jurors are

_____

[5]The majority of the Court struck down the provision in Farris because the act was broader than its caption and thus unconstitutional under Tenn. Const. Art. II, § 17.

10

not left on their own to decipher the intricacies of parole law. We conclude that Tenn. Code Ann. § 40-35-201(b)(2) provides explicit, objective, and unambiguous guidance sufficient to overcome any allegation of vagueness.

The appellant's second due process argument is that the jury instruction given under Tenn. Code Ann. § 40-35-201(b)(2) was impermissibly inaccurate and misleading, thus depriving him of a fair trial. The instruction at issue informed the jury as to the shortest possible sentence for aggravated burglary under Range I (three years), and the longest possible sentence under Range III (fifteen years). The jury was additionally instructed that the minimum portion of the sentence that a defendant must serve before becoming eligible for parole is thirty percent, which is the applicable percentage under a Range I sentence. Tenn. Code Ann. § 40-35-112. Once the sentence reduction credits and the safety valve provisions were applied to the shortest sentence under Range I, the shortest possible period of incarceration was approximately four months.

The appellant contends that the above information was misleading because the State had already filed a notice of intent to seek enhanced punishment under Range III. Hence, the actual minimum he was facing was ten years, not three, and the release eligibility he was subject to was forty-five percent, not thirty percent. Tenn. Code Ann. §§ 40-35-112(c) and -501(e) (1990). Further, he argues that the safety valve provision should not have

been utilized in the jury instruction, because its application to his sentence is uncertain.

He compares his situation to <u>State v. Cook</u>, 816 S.W.2d 322, a case in which the defendant was convicted of multiple counts of aggravated rape and aggravated sexual battery of a child under the age of thirteen. Because of the age of the child, the offense was statutorily deemed an "aggravated offense," requiring sentencing as a Range II offender. However, the State did not timely file a notice of intent to seek enhanced punishment. The trial court erroneously assumed that the State's failure to file such notice foreclosed the possibility of a Range II sentence and instructed the jury only as to punishment under Range I. <u>Id.</u> at 323. This Court held that regardless whether the State had filed the required notice of intent, the law required that the defendant be sentenced as a Range II offender. Because the jury needed to know the true range of punishment before deciding guilt or innocence, the case was remanded for resentencing. <u>Id.</u> at 326-27.

We find <u>Cook</u> to be inapposite. The jury in <u>Cook</u> was not instructed as to the proper range of punishment. The jury in this case was properly instructed that the overall range of punishment for aggravated burglary, from Range I to Range III, was three to fifteen years. Furthermore, the instruction regarding "the <u>minimum</u> number of years a person sentenced to imprisonment for these offenses must serve before reaching the <u>earliest</u> release eligibility date" was accurate, because the actual decision whether to permit enhancement does not occur until after conviction at the

12

sentencing hearing. The minimum the appellant was facing at the time the jury received this instruction was three years at thirty percent, despite the fact that the State had filed a notice of intent to seek enhanced punishment. This is in marked contrast to the Cook case, where the defendant was statutorily ineligible for any sentence less than Range II if convicted.

We find the instant case more factually similar to State v. Smith, 926 S.W.2d 267 (Tenn. Crim. App. 1995). The defendant in Smith was charged with forgery, a Class E felony; thus, from Range I to Range III the possible sentences were from one to six years. Tenn. Code Ann. § 40-35-112. The State filed a notice of intent to seek enhancement to Range II; if they were successful, Smith would be facing two to four years. The trial court instructed the jury that the defendant was facing one to four years. On appeal, the Court of Criminal Appeals noted:

> Whether the defendant qualified as Range I or Range II depended upon the proof offered at any subsequent sentencing hearing. Thus, the jury was aware of the possible range of punishment that could have resulted from their verdict. In our view, the instructions were accurate.

Id. at 271 (citation omitted). We likewise find the instructions to be accurate in this case. While it might be more desirable to have the jury informed as to the minimum sentences and their respective release eligibility percentages in each range for which the defendant qualifies, that is not what the statute requires. We are reluctant to add another layer that would only complicate this issue for the jury.

13

The appellant's final argument is that parole eligibility, sentence reduction credits, and related matters are entirely irrelevant to the jury's ultimate function: the determination of guilt or innocence. Therefore, he argues, instructing juries on such matters violates his due process right to a fair trial because the jury is allowed to base its decision on facts other than those relating to guilt or innocence. However, we disagree with the characterization of the sentencing and parole information as entirely irrelevant. While it may not be relevant in the strictest sense, it does have a measure of relevance. And as we previously explained, the legislature has determined for us the relevancy of sentencing and parole information.

Moreover, providing the jury with such information does not violate the appellant's constitutional rights. In <u>Shannon v. United States</u>, 512 U.S. 573, 114 S. Ct. 2419, 129 L. Ed.2d 459 (1994), the United States Supreme Court held that federal courts are not <u>required</u> to instruct non-sentencing juries on the actual consequence of a "not guilty by reason of insanity" verdict; the Court did not hold that it would be unconstitutional to do so. Rather, the decision was primarily based on the fact that the federal statute governing the insanity defense did not authorize such an instruction. <u>Id.</u> at 580-87, 114 S. Ct. at 2425-28, 129 L. Ed.2d at 467-71. In this case, however, the statute not only explicitly authorizes the jury instruction, but indeed requires it.

14

The United States Supreme Court considered the constitutional ramifications of a similar jury instruction in <u>California v. Ramos</u>, 463 U.S. 992, 103 S. Ct. 3446, 77 L. Ed.2d 1171 (1983). In that case, the Court upheld California's practice of informing juries about the Governor's power to commute a life sentence without the possibility of parole to a life sentence with the possibility of parole, even though it was the jury who imposed the sentence. The defendant asserted that the instruction was unconstitutional because it was irrelevant to the sentencing decision and too speculative an element for the jury's consideration. The Court disagreed and found that the jury's consideration of possible commutation was not prohibited by the United States Constitution. The Court concluded that "the wisdom of the decision to permit juror consideration of possible commutation is best left to the States." <u>Id.</u> at 1014, 103 S. Ct at 3460, 77 L. Ed.2d at 1189.

The people of this State, through the members of the General Assembly, have indicated a desire for truth in the sentencing process. Tennessee Code Annotated § 40-35-201(b)(2) is a reflection of that desire. As a matter of policy, the legislature has decided that the sentencing information is relevant because jurors are better off having concrete information on these issues rather than being left to speculate on their own. The rationale for permitting an instruction on the range of punishment, even though the jury does not impose the sentence, is that in reality, "jurors will consider punishment anyway and without direction may speculate to the possible detriment of a defendant.

15

If nothing else, the instruction impresses upon the jurors the consequences of a guilty verdict." 11 David Raybin, <u>Criminal Practice and Procedure</u> § 30.73 (1985).

The jurors in this case were properly instructed that the State must prove each element of the charged offense beyond a reasonable doubt. Significantly, they were additionally instructed that they were not to attempt to fix punishment for the offense and that the sentencing information was "for your information only." When the trial court explains, as it did here, that the sentencing, parole, and early release information is not to be considered in the determination of guilt or innocence, then certainly no due process violation has occurred. A jury is presumed to have followed the law as instructed. <u>State v. Harris</u>, 839 S.W.2d 54, 72 (Tenn. 1992). We have no reason to suspect that the jury failed to heed the instructions given by basing its verdict on irrelevant considerations. While some may prefer a "pure" system where juries are wholly unaffected by considerations other than those strictly relevant to guilt or innocence, the reality is that jurors bring their experience and knowledge into the courtroom with them. We do not quarrel with those who feel it is better for them to be accurately informed rather than left to speculate.

Finally, because Tennessee's trial courts no longer operate under a system of jury sentencing, an instruction under Tenn. Code Ann. § 40-35-201(b) does not permit a jury to impose a sentence based on how much time they speculate that a defendant will actually serve. As this Court stated in <u>Farris</u>, "[a] greater

16

defect in the law stems from the fact that jurors tend to attempt to compensate for future clemency by imposing harsher sentences." 535 S.W.2d at 614; see also State v. Johnson, 698 S.W.2d 631, 632 (Tenn. 1985), cert. denied, 476 U.S. 1130, 106 S. Ct. 1998, 90 L. Ed.2d 679 (1986). Now that the judge imposes the sentence, the risk of such compensation no longer exists. In sum, under the circumstances presented we find that the jury instruction given under Tenn. Code Ann. § 40-35-201(b)(2) did not deprive the appellant of his due process right to a fair trial.

                                        III

We conclude that Tenn. Code Ann. § 40-35-201(b)(2) does not violate the Separation of Powers Clauses of the Tennessee Constitution. Neither is the statute impermissibly vague, nor does it require a misleading jury instruction. Additionally, we are satisfied that the jury based its verdict upon the law and evidence, in accordance with the instructions of the trial court. Thus, we find that neither the Due Process Clause of the United States nor the Tennessee Constitution was violated by the jury instruction given pursuant to the statute. The convictions and sentence imposed by the trial court are affirmed.

                                    _____
                                    ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, CJ.
Drowota, Holder, JJ.
Reid, S.J.

17