IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

DECEMBER SESSION, 1998

FILED

April 26, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9803-CR-00082 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. JOHN P. COLTON, JR., |
| GARY ANTONIO JOHNSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (SECOND DEGREE MURDER) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

CHARLES CURBO                         JOHN KNOX WALKUP
P.O. Box 322                          Attorney General & Reporter
Memphis, TN  38101-0322
                                      DOUGLAS D. HIMES
                                      Assistant Attorney General
                                      2nd Floor, Cordell Hull Building
                                      425 Fifth Avenue North
                                      Nashville, TN  37243

                                      JOHN W. PIEROTTI
                                      District Attorney General

                                      DANIEL WOODY
                                      Assistant District Attorney General
                                      Criminal Justice Center, Suite 301
                                      201 Poplar Avenue
                                      Memphis, TN  38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Gary Antonio Johnson, appeals as of right his conviction of second degree murder following a jury trial in the Shelby County Criminal Court. The trial court sentenced Defendant as a Range I Standard Offender to twenty-two (22) years in the Department of Correction. In this appeal, Defendant argues that the trial court erred in its instruction on range of punishment. After a careful review of the record, we affirm the judgment of the trial court.

A brief summary of the facts reveals that during the morning of May 10, 1996, Ray Lee, the victim, and his brother, Harold Lee, went to the "Chinese store" on the corner of Trigg and Wellington to buy a beer. Defendant ("Little Tony") was on the other side of the street in front of S & M Grocery. The victim and Defendant exchanged words. Shortly thereafter, gunfire erupted with Defendant firing two pistols at the victim and the victim firing a rifle at Defendant. No one was injured during this incident.

Two witnesses testified that after the morning incident, Defendant and his uncle, Walter Farmer ("Little Walter"), drove by the home of victim's mother at 406 Lucy in Memphis, Tennessee. Farmer called ten-year-old Corey House to the car and told him that they had something for his brother, the victim. Defendant and Farmer displayed their weapon to the boy and then drove off.

Later that same afternoon, the victim was talking to James Weston near the corner of Wellington and Cambridge. Weston's rear window of his car had been shot-out by the victim in the morning gunfight. At some point, Defendant, his uncle,

Anwar L. Odom (Lavell), and Greg Williams ("Little Greg") pulled up in their car and gunfire erupted again. This time the victim was hit by the gunfire and fell to the ground. Defendant was shooting a .12 gauge pump shotgun during the gunfire exchange. Defendant and the other men then fled the scene in their car.

The police recovered nine spent shotgun shells, eight nine-millimeter casings, two spent bullets and one live nine-millimeter round. It was determined that the victim was shot three times and died as a result of those wounds. The victim received one gunshot wound which was a "flesh wound." The victim also had two shotgun wounds which caused extensive damage to his lungs, heart, liver, spleen, and intestines. These wounds were testified to as being "very lethal."

On May 13, 1996, Defendant turned himself in to the police. Defendant was advised of his constitutional rights and then gave the officers a five page statement. In his statement, Defendant confessed to shooting the victim three or four times. Defendant described the early morning incident at Trigg and Wellington, and the final shootout at Wellington and Cambridge. Defendant stated the following:

> So, me, Lavell, Walter, and Lil' Greg, we were fixin' [to] go up there and talk to my momma. Soon as we hit the corner, we see Ray Lee [victim] leaning in the door of the truck, and the other dude was leaning on the back bed of the truck. So, when we stopped, the other dude pointed at the little junkie car we were in. Then Ray [the victim] pulled out his pistol and git [sic] to shooting. We jumped out [of] the car right there. I just ran in the street and started shooting. He [the victim] fell and we ran back to the car.

At trial, Defendant denied driving by the victim's mother's house on the morning of the murder. As to the last shootout, Defendant stated that his group was armed when they got into the car. He said he had a shotgun, Farmer had a .380

caliber pistol, Williams had a shotgun, and Lavell had a nine-millimeter pistol. Defendant said he took a shotgun because he could shoot it better than the automatics. Defendant denied that they went out looking for the victim. Defendant admitted shooting the victim while the victim was on the ground because "he [the victim] was shooting at me." Defendant did reconfirm his previous statement given to the police. The jury found Defendant guilty of second degree murder. On January 12, 1998, the trial court sentenced Defendant to twenty-two years as a Range I Standard Offender.

In this appeal, Defendant specifically raises the following issue:

> Did the Trial Court err in charging the jury on the range of punishment with an inclusion of eligibility of parole/suspension of sentence included regarding range 1 only, particularly when there was no written or oral request by either the state of [sic] the Defendant prior to the jury being selected or otherwise?

In Defendant's brief, he argues that he was prejudiced by the range of punishment instruction in two respects: (1) "it did not explain both the minimum <u>and</u> maximum credits, but <u>only listed the maximum credits</u>;" and (2) it "did not instruct the jury that the range of punishment for manslaughter is 3 to 15 years, but instructed the jury that the range of punishment was 3 to 6 years." Defendant further contends that the trial court erred in even charging the jury with any range of punishment when neither he nor the State requested the instruction pre-trial as required by statute.

At the time of Defendant's trial, Tennessee Code Annotated section 40-35-201(b) provided the following:

> (1) In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, upon the motion of either

party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses.

(2)(A)(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment of the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable.

(ii) Such instructions to the jury shall also include a statement that whether a defendant is actually released from incarceration on the date when such defendant is first eligible for release is a discretionary decision made by the board of paroles based upon many factors, and that such board has the authority to require the defendant to serve the entire sentence imposed by the court.

On May 1, 1998, Tennessee's General Assembly passed Public Chapter No. 1041, an amendment to § 40-35-201, which deletes the foregoing subsection (b) in its entirety and provides that the trial court shall not instruct the jury on possible penalties for the offense charged nor lesser included offenses. This amendment applies to all trials occurring after the Act's effective date. However, since Defendant's trial was held in 1997, the former subsection (b) applies. Our supreme court has upheld the constitutionality of jury instructions given pursuant to former Tennessee Code Annotated section 40-35-201(b). State v. King, 973 S.W.2d 586 (Tenn. 1998).

The trial court's instruction in the case sub judice on range of punishment provided:

The jury will not attempt to fix any sentence. However, you may weigh and consider the meaning of a sentence of imprisonment. The range of punishment for the crimes involved herein is as follows:

The punishment for murder in the first degree is imprisonment for life in the penitentiary.

The punishment for murder in the second degree is imprisonment in the penitentiary for not less than fifteen (15) nor more than twenty-five (25) years.

The punishment for voluntary manslaughter is imprisonment in the penitentiary for not less than three (3) nor more than six (6) years.

You are further informed that the minimum number of years a person sentenced to imprisonment for these offenses must serve before reaching the earliest release eligibility date is:

## MURDER FIRST DEGREE

A defendant who receives a sentence of imprisonment for life shall not be eligible for release until the defendant has served at least fifty-one (51) years of such sentence.

## MURDER SECOND DEGREE

A defendant convicted of murder in the Second Degree is not eligible for early release.

## VOLUNTARY MANSLAUGHTER

|  | 3 YRS. |
|---|---|
| RED% | 30% |
| RED% APPLIED | 0.90 yrs. |
| W/MAX CREDITS | 0.59 yrs. |
| SAFETY VALVE | 0.54 yrs. |
| S.V. & MAX CREDITS | 0.35 yrs. |

Whether a defendant is actually released from incarceration on the date when first eligible for release is a discretionary decision made by the Board of Parole and is based on many factors. The Board of Parole has the authority to require a defendant to serve the entire sentence imposed by the Court.

First, Defendant contends that the trial court erred in not instructing the jury on the number of years before release eligibility based on the minimum credits.

In compliance with the statute, the trial court informed the jury as to the shortest and longest possible sentences as a Range I Standard Offender for each offense charged to the jury. Additionally, the trial court instructed the jury on Defendant's earliest release eligibility date without credits applied, with maximum credits applied, with the safety valve applied, and with both the maximum credits and the safety valve applied. See Tenn. Code Ann. § 40-35-201(b)(2)(A)(i). Although the trial court did not specifically use the phrase "minimum credits," it did give the sentence without credits, which is essentially the minimum. We find that the trial court tracked the language of the statute and that the jury was properly instructed on range of punishment. See also King, 973 S.W.2d 586.

Secondly, Defendant argues that the trial court should have instructed the jury that the range of punishment for manslaughter is three to fifteen years, not three to six years. The trial court instructed the jury as to what punishment would be for a Range I Standard Offender convicted of voluntary manslaughter (three to six years). Defendant did not qualify for an enhanced punishment range, so the trial court correctly instructed the jury as to Range I punishment. Defendant was eventually convicted of second degree murder and sentenced as a Range I Standard Offender. We cannot see how the court's instruction on voluntary manslaughter prejudiced Defendant, especially in light of the fact that had he been convicted of voluntary manslaughter, he would have been sentenced as a Range I Standard Offender in which case the trial court's instruction would have been applicable and correct. See, e.g., State v. Smith, 926 S.W.2d 267 (Tenn. Crim. App. 1995).

Finally, the record indicates that neither party even requested a range of punishment instruction prior to trial as required by Tenn. Code Ann. § 40-35-

201(b)(1). However, the trial court engaged counsel in the following discussion prior to closing arguments:

> The Court: Lawyers, did you get a copy of any of that [the charge]?
>
> Mr. Curbo [Defendant's lawyer]: Yes, sir
>
> The Court: All right. We're going to put the time amounts -- amounts of time and everything that people -- that the defendant could possibly get on all of these various --
>
> Mr. Curbo [Defendant's lawyer]: Are you talking about the full range, Judge?
>
> The Court: Um-hum.

Counsel for Defendant did not object at anytime. Also, counsel made no objection to the range of punishment instruction before or after it was given to the jury. The first time counsel challenged the instruction was at the sentencing hearing, and then only as to the constitutionality of the statute.

The instruction in this case was accurate and Defendant has failed to show any prejudice resulting from the instruction. In State v. Ray Vance, the record did not reflect that either party filed a request for range of punishment prior to the seating of the jury. C.C.A. No. 01C01-9610-CC-00425, slip op. at 10, Stewart County (Tenn. Crim. App., Nashville, Dec. 3, 1997), perm. to appeal denied (Tenn. 1998). Nevertheless, a range of punishment instruction was charged without objection. Id. In concluding that the error was harmless, a panel of this Court stated the following:

> We fail to see how the instruction, which was available as a matter of right to either party and which contained no information which has been shown to be inaccurate, prejudiced the defendant.

Id.  As in Vance, any error in the case sub judice in charging range of punishment absent the statutorily required request is harmless beyond a reasonable doubt.  Id.; Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

Based on all the foregoing, the judgment of the trial court is affirmed.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
JOHN EVERETT WILLIAMS, Judge