IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH SESSION, 1999

FILED

June 3, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9711-CR-00442 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. W. FRED AXLEY, JUDGE |
| OTIS J. WICKFALL, | ) | |
| | ) | |
| Appellant. | ) | (FIRST DEGREE MURDER) |

FOR THE APPELLANT:

**CRAIG V. MORTON, II**
200 Jefferson, Suite 725
Memphis, TN 38103
(On Appeal)

**A. C. WHARTON**
District Public Defender
(At Trial)

**TRENT HALL**
Assistant Public Defender

**LESLIE MOZINGO**
Assistant Public Defender
Criminal Justice Center, Suite 201
201 Poplar Avenue
Memphis, TN 38103

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**J. ROSS DYER**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**JOHN W. PIEROTTI**
District Attorney General

**EDGAR A. PETERSON, IV**
Assistant District Attorney General
Criminal Justice Center, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Otis J. Wickfall, appeals as of right his conviction for first degree murder in the Shelby County Criminal Court. Defendant was sentenced to life imprisonment. In this appeal, Defendant raises the following issues:

> I. Whether the trial court erred in denying Defendant's Motion for Judgment of Acquittal based on the evidence presented by the State;
>
> II. Whether the trial court erred in allowing the introduction of the victim's blood-stained shirt to show the trajectory and angle of the bullet;
>
> III. Whether the trial court erred in allowing the introduction of a photograph of a recording label depicting the slang term for murder;
>
> IV. Whether the trial court erred in taking judicial notice of California Penal Code section 187 defining murder; and
>
> V. Whether the trial court erred in its jury instructions.

After a careful review of the record, we affirm the judgment of the trial court.

The facts presented at trial reveal that on April 25, 1995, Keena Thomas spent the day with two of her friends and her seven-month-old daughter. Between 8:00 and 8:30 that evening, the group arrived at the home of Ms. Thomas' 19-year-old boyfriend, Robert Beckley, the victim in this case. While at the victim's home, Ms. Thomas received six or seven messages on her pager from Defendant who was her ex-boyfriend and father of her seven-month-old daughter. The messages were a sequence of numbers which included the phone number of Defendant's location followed by 34, 911, and 187. Ms. Thomas knew it was Defendant paging her because the number 34 was a code he used when he paged her. Ms. Thomas

testified that 911 indicated the urgency of Defendant's need to speak with her. The following colloquy then took place regarding the number 187:

> State:  187, what significance is that?  What's that mean?
>
> Ms. Thomas:  It mean -- it means -- well like in slang it means murder.  I guess it meant he was mad or whatever.
>
> State: In slang it means what?
>
> Ms. Thomas: Murder.
>
> State: What sort of slang does 187 mean murder in?
>
> Ms. Thomas: Just like rap songs.
>
> State: Are you familiar with any rap artists who use 187 in their music?
>
> Ms. Thomas: Uh-huh (Affirmative response).
>
> State: Who?
>
> Ms. Thomas: Spice One.
>
> State: Do you know any recording that he has specifically using 187 in it?
>
> Ms. Thomas: Yes.
>
> State: What?
>
> Ms. Thomas: He has a [sic] album titled 187 He Wrote.
>
> State:  187 He Wrote?
>
> Ms. Thomas: Uh-huh (Affirmative response).
>
> State: Have you ever heard that cd, that recording?
>
> Ms. Thomas: I heard some of it.
>
> State: Have you ever seen the album cover?
>
> Ms. Thomas: Yes.

Ms. Thomas did not mention that she knew 187 to mean murder in her written statements to police or during her testimony at the preliminary hearing.

After Ms. Thomas had been paged several times, the victim called Defendant and told him that he could not speak with Ms. Thomas. About 15 to 20 minutes after this conversation, the group inside the victim's house all walked outside to Ms. Thomas' car. While her friends and her daughter were sitting in the car, Ms. Thomas stood in the open door of her car and continued talking to the victim. As the two were talking, a car pulled up behind Ms. Thomas' car. Ms. Thomas first noticed the car when it came around the corner going extremely fast and "burning rubber." Ms. Thomas testified that Defendant got out of that car and she told the victim, "[t]here's my baby's daddy." Defendant had a silver gun in his hand, and according to Ms. Thomas, he shot the victim without ever saying a word. Three other witnesses testified and confirmed Ms. Thomas' recitation of the events, but one witness did say that as Defendant began to walk towards Ms. Thomas and the victim, that he said, "[b]itch, I told you," and then shot and killed the victim.

Ms. Thomas testified that she and Defendant had dated for approximately two and one-half years before breaking up in September 1994. She said that the reason for the break up was because Defendant had gotten another girl pregnant during the course of their relationship and during the pendency of her pregnancy. In January 1995, Ms. Thomas began a relationship with the victim. At the time she began dating the victim, she and Defendant were still having contact as a result of his visitation with their daughter. She stated that she would see Defendant approximately once every two weeks and this was usually at her home. These visits apparently took place up until the time of the shooting on April 25, 1995.

Dr. O'Brian Cleary Smith testified that the victim received a fatal gunshot wound entering his lower back and exiting his left chest. He said he believed that

the victim had either been bent over or lying on the ground at the time the bullet struck him. In addition, Dr. Smith testified that the fatal bullet went through the victim's heart and caused such significant damage that the heart could no longer function, thereby causing his death.

### I. Denial of Defendant's Motion for Judgment of Acquittal

Defendant contends that the trial court erred in overruling his motion for judgment of acquittal at the close of the State's proof. Specifically, he argues that the evidence was insufficient to show premeditation, an element of first degree murder. In denying Defendant's motion, the trial court stated the following:

> [I]f the jury believes the proof that has been adduced before it this last couple of days. They're the finders of fact. It's a question of fact for the jury to resolve whether it was premeditated or whether it was an act involving passion or no passion. A knowing killing, for instance. The Court will allow it to go to the jury based on the [sic] as charged and the lesser offenses.

We agree. When presented with a motion for judgment of acquittal, the trial court's only consideration is the legal sufficiency of the evidence. State v. Blanton, 926 S.W.2d 953 (Tenn. Crim. App. 1996). Sufficiency of the evidence is the appropriate standard by which both trial and appellate courts evaluate the adequacy of the evidence. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). The duty of the trial judge and the reviewing court on the determination of a motion for a judgment of acquittal is the same as for a motion for a directed verdict. See State v. Torrey, 880 S.W.2d 710, 712 (Tenn. Crim. App. 1993). This duty is as follows:

> The rule for determining a motion for a directed verdict requires the trial judge and the reviewing court on appeal to look at all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion,

> and to allow all reasonable inferences from it in its favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied.

State v. Thompson, 549 S.W.2d 943, 946 (Tenn. 1977) (citation omitted).

Rule 29(a) of the Tennessee Rules of Criminal Procedure provides in pertinent part as follows:

> The court on motion of a defendant . . . shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information . . . if the evidence is insufficient to sustain a conviction of such offense or offenses.

In the instant case, however, we find the evidence sufficient to sustain a conviction for first degree murder. At the time of the offense, first degree murder required the "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1994) (the element of "deliberation" was omitted as a requirement from this statute on July 1, 1995). Premeditation necessitates "the exercise of reflection and judgment," Tenn. Code Ann. § 39-13-201(b)(2) (Supp. 1994), requiring "a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). Deliberation, on the other hand, is defined as an act committed with a cool purpose and without passion or provocation. See State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992); see also Tenn. Code Ann. § 39-13-201(b)(1) (Supp. 1994). Deliberation also requires "some period of reflection, during which the mind is 'free from the influence of excitement, or passion.'" Brown, 836 S.W.2d at 540 (citation omitted). The elements of premeditation and deliberation are questions for the jury and may be inferred from the circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993).

On the night of the murder, Defendant paged Ms. Thomas six to seven times. He included the numbers 34, 911, and 187 in the pages. Ms. Thomas testified that 34 was his personal code, 911 meant that the matter was urgent, and that 187 "in slang . . . means murder." The victim called Defendant and told him to stop paging Ms. Thomas. About 20 minutes after this phone call, Ms. Thomas and the victim were standing outside when a car being driven by Defendant came very fast around the corner and stopped just a short distance from where the victim and Ms. Thomas were standing. Defendant got out of the car, pointed a silver gun at the victim, and according to one witness, said, "Bitch, I told you," and then shot the victim. Defendant contends on appeal that this was a killing of passion and therefore it cannot be classified as first degree murder. However, from the record, it is clear that the evidence is sufficient to support the trial court's refusal to grant this motion. We find that the trial court properly concluded that there was adequate evidence for the jury to determine that Defendant was guilty of first degree murder. This issue is without merit.


## II.  Admissibility of Victim's Blood-Stained Shirt


Defendant contends in this issue that draping the victim's clothing over a mannequin to prove the trajectory and angle of the bullet was done solely to inflame the jury. He argues that this amounted to cumulative evidence and was prejudicial. However, Defendant did not object to this evidence at trial, and this issue is therefore deemed waived. See Tenn. R. App. P. 36(a).

Even if not waived, this issue is without merit. Whether to admit this evidence is within the discretion of the trial court and will not be reversed absent a clear showing of an abuse of discretion appearing on the face of the record. See e.g., State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993). The shirt was used to corroborate the State's witness who testified to the trajectory and line of the bullet. Even though Defendant conceded these facts, the State still had a right to prove its case. The trial court did not abuse its discretion in allowing the shirt into evidence. This issue is without merit.

## III. Admissibility of Photograph

_____

Defendant argues that the introduction of a photograph of a recording label was irrelevant and prejudicial to Defendant. Specifically, the photograph of the label depicts a male holding a gun with the words "187 He Wrote" on it. Ms. Thomas testified that it was a rap album by the group "Spice One."

Rule 403 of the Tennessee Rules of Evidence states that relevant evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice. However, Rule 401 states that evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence. Tenn. R. Evid. 401. Whether to admit this is within the discretionary authority of the trial court and will not be reversed absent a clear showing of an abuse of discretion appearing on the face of the record. See, e.g., Dickerson, 885 S.W.2d at 92.

Ms. Thomas testified that Defendant paged her with a sequence of numbers, one being the number 187. When asked what 187 meant, she said, "Well, like in slang it means murder." The photograph admitted was a rap group's album cover entitled "187 He Wrote." The label is probative in that it corroborates the testimony of Ms. Thomas that 187 is understood by some people to be slang for murder. The trial court did not abuse its discretion in admitting this into evidence. This issue is without merit.

IV.  Judicial Notice of California Penal Code Section 187

Defendant contends that the trial court erred in taking judicial notice of and in allowing the introduction of California Penal Code section 187 into evidence. As with the introduction of the recording label photograph, Defendant argues that the introduction of this penal code section was irrelevant and prejudicial to Defendant.

Rule 202 of the Tennessee Rules of Evidence states in pertinent part that the trial court "shall take judicial notice of . . . the constitutions and statutes of the United States and of every state, territory, and other jurisdiction of the United States. . . ." Tenn. R. Evid. 202(a).  In order to explain to the jury that 187 is a common slang term for murder, the State had to show some evidence from where that term came. Penal code section 187 provides in pertinent part that murder is "the unlawful killing of a human being, or a fetus, with malice aforethought." We find the evidence to be highly relevant to a material issue. Furthermore, the trial court was required to take judicial notice of such an item. See Tenn. R. Evid. 202(a).  This issue is without merit.

Defendant claims that the trial court's jury instruction pertaining to range of punishment and parole eligibility was error. Defendant contends that although the issues are identical to the issues decided by our supreme court in State v. King, 973 S.W.2d 586 (Tenn. 1998), he can nonetheless distinguish his case from King.

In King, the defendant challenged the constitutionality of Tenn. Code Ann. § 40-35-201(b)(2), claiming the statute violated separation of powers and due process. The court upheld the statute and stated the following:

> We conclude that Tenn. Code Ann. § 40-35-201(b)(2) does not violate the Separation of Powers Clauses of the Tennessee Constitution. Neither is the statute impermissibly vague, nor does it require a misleading jury instruction. Additionally, we are satisfied that the jury based its verdict upon the law and evidence, in accordance with the instructions of the trial court. Thus, we find that neither the Due Process Clause of the United States nor the Tennessee Constitution was violated by the jury instruction given pursuant to the statute.

Id. at 592. However, the court was careful to limit its holding to the circumstances of the case:

> Significantly, [the jury members] were additionally instructed that they were not to attempt to fix punishment for the offense and that the sentencing information was 'for your information only.' When the trial court explains, as it did here, that the sentencing, parole, and early release information is not to be considered in the determination of guilt or innocence, then certainly no due process violation has occurred.

Id.; but see State v. Jason M. Weiskopf, No. 0201-9611-CR-00381, Shelby County (Tenn. Crim. App., Jackson, Dec. 4, 1998) (Rule 11 application filed by the State on Feb. 3, 1999) (finding plain error in the jury charge because the jury was instructed

they could "weigh and consider the meaning of a sentence of imprisonment"). The jury instruction in the case <u>sub judice</u>, which was substantially the same as the one in <u>King</u>, reads in pertinent part as follows:

> The jury will not attempt to fix any punishment or sentence for these offenses. However, for your information only, you are informed [of] the ranges of punishment as to the offenses . . . .

The supreme court in <u>King</u> found the above instruction did not violate a defendant's constitutional rights.

First, Defendant contends that <u>King</u> does not apply to his case because the defendant in <u>King</u> was convicted of a property offense, while he has been convicted of murder. This argument is without merit as the statute does not distinguish between offenses. Second, Defendant argues that his case is distinguishable from <u>King</u> because the defendant there was charged as a persistent offender and Defendant was not. However, again there is not a different standard depending on the offender's status. Third, Defendant alleges that his case is distinguishable because he raises new issues with regards to due process. Defendant contends that the jury was given erroneous calculations and that the jury was misled into believing if Defendant was convicted of second degree murder that he would serve the minimum amount of time. However, we find the trial court's calculations and instructions to have been accurate under the applicable law. Defendant also argues that the instructions were ambiguous and vague. However, this particular issue was decided in <u>King</u>, and we are bound by the supreme court's ruling.

Finally, Defendant argues that the constitutional principle of separation of powers was violated. Again, this issue was decided by our supreme court in King. Specifically, the court stated the following in regards to this issue:

> Admittedly, the statute constitutes an overlapping of the legislative power with that of the judiciary, and it may indeed be close to an improper infringement. Yet, having already acknowledged the authority of the legislature to provide a range of punishment instruction, we must also acknowledge that an explanation of the reality of early release and parole is no further an encroachment into the judicial function. The jury must still decide the issue of guilt or innocence, and the trial court must still decide the ultimate sentence to be imposed. Therefore, we conclude that Tenn. Code Ann. § 40-35-201(b)(2) does not violate the Separation of Powers Clauses of the Tennessee Constitution.

Id. at 589.

Based on all the foregoing, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
JOSEPH M. TIPTON, Judge