## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

**FILED**

**December 4, 1998**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9611-CR-00381 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. ARTHUR T. BENNETT, |
| JASON M. WEISKOPF, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (First Degree Murder) |

### UPON REMAND FROM THE SUPREME COURT OF TENNESSEE

**FOR THE APPELLANT:**

**LESLIE I. BALLIN**
**MARK A. MESLER**
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**ELIZABETH T. RYAN**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**THOMAS D. HENDERSON**
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

**OPINION FILED:** _____

**REVERSED AND REMANDED**

**JOE G. RILEY,**
**JUDGE**

**O P I N I O N**

This case is again before the Court after remand from the Supreme Court of Tennessee in light of its opinion in State v. King, 973 S.W.2d 586 (Tenn. 1998). The issue upon remand is whether the trial court erred by instructing the jury that it could "weigh and consider" the meaning of a sentence of imprisonment in arriving at its verdict. Finding the jury charge given in this case and the jury charge given in King significantly different, we again declare a due process violation. Therefore, we reverse and remand for a new trial.

## PROCEDURAL HISTORY

Defendant, Jason M. Weiskopf, was convicted by a Shelby County jury of premeditated first degree murder and sentenced to life imprisonment. In his original appeal to this Court he presented three issues for our review: (1) whether the evidence was sufficient to support the conviction for premeditated first degree murder; (2) whether the trial court erred in allowing into evidence photographs of the victim's body; and (3) whether the trial court erred in charging the jury on parole eligibility. Although this Court found the evidence to be sufficient to support the conviction and the photographs to have been properly admitted, this Court found the jury instructions on parole eligibility to be in violation of due process. State v. Jason M. Weiskopf, C.C.A. No. 02C01-9611-CR-00381, Shelby County (Tenn. Crim. App. filed February 4, 1998, at Jackson).

Permission to appeal was granted by the Supreme Court of Tennessee, and the case was "remanded to the Court of Criminal Appeals for reconsideration in light of State v. King, 973 S.W.2d 586 (Tenn. 1998)." State v. Jason M. Weiskopf, No. 02C01-9611-CR-00381, Shelby County (Tenn. filed November 2, 1998, at Jackson).

2

# FACTS

In order to place the parole eligibility jury instructions in proper context, we incorporate this Court's statement of facts in our prior opinion.

The state's proof revealed that the defendant and the victim were both employed at the Ridgeway McDonald's in Memphis. On September 13, 1994, a day prior to the homicide, the defendant and the victim had a verbal altercation in the cooking area. That night the defendant told a fellow employee, Cornelius Buchanan, that he intended to shoot the victim the next morning since he was tired of being called "bitches and whores" by the victim.

The next morning at approximately 2:50 a.m., Mary Lee, the opening manager for McDonald's, arrived at the Ridgeway location to prepare for the 5:00 a.m. opening. Both the defendant and the victim were scheduled to report at 4:00 a.m.

Shortly before 4:00 a.m., Jafus Miller, another employee, heard three (3) shots while he was sitting in his vehicle. He assumed, however, that they were firecrackers. Lee also heard a noise about that time, yet did not realize it was gunfire.

When the employees did not report to work at 4:00 a.m., Lee tried to reach the defendant by phone and was told he had already left for work. At approximately 4:15 a.m., the defendant called her and actually arrived at work at 4:22 a.m.

Shortly thereafter, Miller discovered the victim's body in the McDonald's parking lot. The victim had been shot once in the back and twice in the face. The autopsy report revealed that the victim died as a result of these gunshot wounds.

On the date of the shooting the defendant told Buchanan, "I told you I was gonna kill Marquese." Buchanan did not believe the defendant. The following day the defendant again told Buchanan that he had shot the victim. He stated that he had walked up to the victim in the parking lot, shook his hand and apologized for the prior altercation. When the victim turned his back, the defendant said, "You mother f _ _ _ _ _" and shot the victim in the back. Defendant related that the victim pled for his life just prior to defendant's shooting him twice in the face. The defendant stated, "the mother f _ _ _ _ _ s at work will respect me now." Defendant further stated he felt no guilt as a result of the shooting.

The defendant was interviewed by the homicide division at approximately 1:00 p.m. on the date of the homicide. He denied shooting the victim.

Upon gathering other information, the authorities arrested defendant on September 16, 1994. At the time of his arrest he stated that he knew who "had snitched on him." Upon being interrogated, the defendant stated that he shot the victim because he was "messing with me. He was going to shoot me eventually." He stated that he waited for the victim to arrive at McDonald's prior to the shooting. He further conceded that the victim was not armed with a weapon and made no mention that the victim did anything to him just prior to the shooting.

3

The defendant stated he was simply afraid that the victim would eventually shoot him. Defendant also took the authorities to a dumpster where he had thrown the murder weapon. The weapon was recovered.

The defense proof consisted of another fellow employee, Morris Robinson, who testified that both the defendant and victim had threatened each other on prior occasions. He further testified that the defendant had told him prior to trial that he thought the victim was going for a gun at the time of the shooting.

The defendant elected not to testify, and there was no further defense proof.

## THE JURY CHARGE

The jury was charged as to the indicted offense of premeditated first degree murder and the lesser offenses of second degree murder and voluntary manslaughter. Pursuant to Tenn. Code Ann. § 40-35-201(b), the jury was instructed as to the range of punishment for these offenses along with the earliest release eligibility dates. The jury was instructed that the earliest release eligibility date for first degree murder was 25 years; the earliest release eligibility date for second degree murder was 1.06 years; and the earliest release eligibility date for voluntary manslaughter was .21 years. Unlike the jury in King, the jury was specifically instructed they could "weigh and consider the meaning of a sentence of imprisonment."

## STATE V. KING

The Supreme Court of Tennessee in King found that the "for your information only" parole eligibility jury instruction was not error; however, the Court appears to have limited its ruling "as applied under the circumstances of this case..." 973 S.W.2d at 587. The Court further stated:

"Significantly, [the jurors] were additionally instructed that they were not to attempt to fix punishment for the offense and that the sentencing information was "for your information only." When the trial court explains, as it did here, that the sentencing, parole, and early release information is not to be considered in the determination of guilt or innocence, then certainly no due process violation has occurred.

4

Id. at 592. The Court concluded that "under the circumstances presented we find that the jury instruction given under Tenn. Code Ann. § 40-35-201(b)(2) did not deprive the appellant of his due process right to a fair trial." Id. (emphasis added)

We likewise conclude there is a glaring and pivotal difference in providing a parole eligibility jury instruction "for your information only" versus instructing the jury, as was done in the case *sub judice*, that the jury can "weigh and consider" sentencing in arriving at the determination of guilt or innocence.

This glaring difference is evidenced in King by its reliance upon California v. Ramos, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed. 2d 1171 (1983). Ramos upheld the California practice of informing juries about the Governor's power to commute a life sentence without the possibility of parole. However, this jury instruction was given during the penalty phase of a capital murder trial in which the jury had the responsibility of sentencing. Thus, the Tennessee Supreme Court's reliance upon Ramos is understandable with reference to the "for your information only" jury instruction. However, the Ramos jury instruction given at the penalty phase of a capital murder trial to a jury that has the responsibility of sentencing may not be compared to a jury instruction given during the guilt/innocence phase of a non-capital case authorizing the jury to consider the meaning of a sentence where the jury has no sentencing responsibilities.

We, therefore, conclude that King in no way sanctions a jury instruction which authorizes the jury to "weigh and consider" the meaning of a sentence in arriving at guilt or innocence. The sole function of the jury in this case was to determine guilt or innocence, not the length of imprisonment. In essence, this jury was specifically told they could consider extraneous information that had nothing whatever to do with guilt or innocence in arriving at their verdict.

One accused of a crime is entitled to have his or her guilt or innocence determined solely on the basis of the evidence introduced at trial and not other circumstances not adduced as proof at trial. Taylor v. Kentucky, 436 U. S. 478, 485, 98 S.Ct. 1930, 56 L.Ed. 2d 468 (1978); Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

5

The nature of this error becomes evident when comparing the release eligibility dates given in this case. The earliest release eligibility date for first degree murder was given at 25 years, whereas for second degree murder and voluntary manslaughter, it was given at 1.06 years and .21 years, respectively. When a jury is told to "weigh and consider" the meaning of a sentence in arriving at a verdict, the nature of the problem is perfectly obvious.

In this case it was readily apparent that the defendant unlawfully took the life of the victim. The primary issue for the jury was whether this was a premeditated first degree murder, second degree murder or voluntary manslaughter. Defense counsel argued to the jury that the evidence, at most, supported a lesser offense. We know not to what extent, if any, the jury considered the ridiculously low release eligibility dates for second degree murder and voluntary manslaughter as compared to the much higher release eligibility date for first degree murder. Nevertheless, we are unable to conclude that this information had no impact upon the jury since the primary issue was the degree of homicide. Accordingly, we are unable to find harmless error.

## CONCLUSION

We find the jury charge given in this case to be fundamentally different from the jury charge given in King. The jury charge was in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 8 of the Constitution of Tennessee. Furthermore, being unable to find harmless error under the circumstances of this case, we reverse and remand for a new trial.

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**GARY R. WADE, PRESIDING JUDGE**


_____
**DAVID G. HAYES, JUDGE**