IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

**STATE OF TENNESSEE v. ANN ELIZABETH MARTIN**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 218646      Stephen M. Bevil, Presiding Judge**

**No. E1999-01361-CCA-R3-CD**
**September 8, 2000**

Defendant Ann Elizabeth Martin was convicted of driving under the influence, first offense. In this appeal as of right she argues (1) the trial court erred when it did not suppress blood test results because of statutory and constitutional infirmities in the implied consent form; and (2) the stop of her vehicle and subsequent arrest are unconstitutional because the arresting officer did not have a reasonable articulable suspicion warranting a traffic stop. Held: the implied consent form complies with the statutory requirements. However, the officer who arrested Defendant did not have a reasonable articulable suspicion warranting a traffic stop. Defendant's conviction is reversed, and the case is remanded for dismissal of the charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Jerry H. Summers and Jimmy F. Rodgers, Jr., Chattanooga, Tennessee, for the appellant, Ann Elizabeth Martin.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussman, Assistant Attorney General; William H. Cox, III, District Attorney General; and Christopher D. Poole, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant, Ann Elizabeth Martin, was convicted after a bench trial in Hamilton County of driving under the influence of an intoxicant, first offense, in violation of Tennessee Code Annotated § 55-10-401. She was sentenced to eleven (11) months, twenty-nine (29) days, fined $360 dollars, ordered to attend DUI school, and her driver's license was suspended for one year. The trial court also suspended all but forty-eight (48) hours of her jail sentence. In this appeal as of right Defendant raises two issues for review: (1) whether the trial court erred when it did not suppress blood test results because of statutory and constitutional infirmities in the implied consent form; and (2) whether the arresting officer had a reasonable articulable suspicion to make a traffic stop when

he observed Defendant's vehicle briefly cross the solid white line to the right of the lane of Defendant's travel. We think that the implied consent form satisfies the statutory requirements. We do not address Defendant's constitutional challenge because Defendant has provided no citations to authority in support thereof and no legal argument. However, we conclude that the arresting officer did not have reasonable articulable suspicion for stopping Defendant's vehicle. We reverse Defendant's conviction for driving under the influence and remand the case to the Hamilton County Criminal Court for dismissal of the charge.

## I. Facts

In the early morning hours of April 13, 1997, Ann Elizabeth Martin was operating a 1996 GMC van on Lee Highway in Chattanooga. Lee Highway is a divided highway with two lanes of travel in either direction. Officer Robert Starnes of the Hamilton County Sheriff's Department was in the vicinity at the time, and he testified that he observed Defendant's vehicle at 3:14 AM just south of the junction of Lee Highway and Highway 153. The vehicle was proceeding northbound on Lee Highway, and Starnes watched Defendant's vehicle move from the right-side travel lane to a merge lane on the far right-hand side of the road. After Defendant's vehicle was in the merge lane

> the tires on the right side of the road crossed over the solid white line onto the paved portion of the road over the traveled portion of the roadway which attracted my attention to the vehicle. The vehicle then came back into the merge lane to get onto 153 and weaved over or crossed over into the slow lane, which would be the outer most lane of Lee Highway on the northbound side. Then at this time I activated my video camera inside my patrol unit and proceeded to record the rest of the information as far as the vehicle's driving.

Defendant's vehicle crossed the bridge going over Highway 153, and made a left-hand turn across the southbound lanes into a parking lot.

At a point immediately prior to Defendant's turn into the parking lot, Officer Starnes activated his blue lights. Defendant came to a stop in the parking lot, and Officer Starnes exited his vehicle to talk with Defendant. After asking Defendant to exit the vehicle Starnes believed that Defendant was intoxicated, and the video tape from Starnes' vehicle shows that Starnes administered several field sobriety tests. Starnes then concluded that Defendant was intoxicated based on Defendant's performance on the field sobriety tests, Defendant's demeanor, and Defendant's conversation with Starnes. After Defendant was placed under arrest, Defendant consented to a blood alcohol test, and Starnes transported Defendant to Erlanger Medical Center for the drawing of blood. The blood was later tested and found to have a .15% blood alcohol level.

Defendant testified that Officer Starnes activated his blue lights when she was on the bridge crossing Highway 153, and she turned left off Lee Highway at the next available turn for a parking lot. Although Defendant acknowledged that she initially refused to consent to a blood alcohol test, she testified that she changed her mind because she wanted to do whatever Officer Starnes wanted her to do. She testified that Officer Starnes informed her that if she did not consent that she would automatically lose her driver's license for a year–but that the officer did not inform her of other

consequences of a refusal. She also testified that she did not read the implied consent form when she signed it.

The video-tape from Officer Starnes' vehicle started with a rear view of Defendant's van as the officer followed Defendant. The van was in the right-hand travel lane, and a car passed Defendant in the left-hand lane. When the car was clear of Defendant's van, Defendant's left turn signal was activated, and Defendant changed lanes. Defendant's left turn signal remained on, and shortly thereafter Defendant's brake lights came on, and Defendant began to enter a left turn lane. As Defendant began to enter the left turn lane, an "LT" designation appeared at the bottom of the video screen, reflecting the fact that Officer Starnes had activated his blue lights. Defendant's vehicle completed the left turn and came to a stop in what appears to be the entryway to a parking lot. The video does not display any traffic violations by Defendant.

Defendant filed a motion to suppress in which Defendant challenged, inter alia, the stop of Defendant's vehicle. The trial court denied the motion, and stated:

> Had this been a very heavily traffic road (sic) and maybe a car had gone past her and because of the size of the vehicle possible had caused her to swerve on the side of the road in order to avoid that vehicle, that would explain it, but this is 3:14 in the morning in an area that is–I think the Court can take notice of the fact there are–the Rock & County Club is not too far away as well as other drinking establishments in the Lee Highway area. At 3:14 in the morning and there's no other traffic to force off the side of the road, to see her swerve on the side of the road, to run across the white line there on the shoulder of the road and then get back in the lane and then go over to the left-hand side of the lane without any cause, I think although it would not rise to the level of probable cause would certainly rise to the level in the officer's opinion who is experienced in the DUI task force to have an articulable suspicion as to why she's driving the way she is and at that time of the morning as I said when those places, drinking establishments in that area certainly would rise to the level of an articulable suspicion that maybe she is doing that because she is operating the vehicle under the influence . . . but I do find then based for those reasons that he did have an articulable suspicion to stop her to inquire further as to why she was operating the vehicle in that manner.

The trial court also denied Defendant's motion to suppress the results of the blood alcohol test.

## II. Analysis

Defendant first argues that the trial court erred when it refused to suppress the results of Defendant's blood test. Defendant argues that the implied consent form was invalid and vague, failed to appraise Defendant of the consequences if Defendant did not consent to the blood test, and did not tell Defendant that she had a statutory right to obtain a blood sample for her own testing. Defendant argues that as a result the implied consent form did not comply with the requirements of

Tennessee Code Annotated § 55-10-406(a), and does not pass constitutional muster. We disagree.

This Court must uphold a trial court's findings of fact resulting from a suppression hearing unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The burden is on the defendant to demonstrate that the evidence preponderates against the trial court's findings. State v. Harts, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. Odom, 928 S.W.2d at 23. However, the application of the law to the facts is a question of law which is reviewed de novo on appeal. Harts, 7 S.W.3d at 84.

Tennessee Code Annotated § 55-10-406(a) provides in part:

(a)(1) Any person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood . . . .

(2) Any law enforcement officer who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alcoholic or drug content of the driver's blood shall, prior to conducting such test, advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court. The court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if such driver was not advised of the consequences of such a refusal.

Tenn. Code Ann. § 55-10-406 (1998).

Here, Defendant first argues that the consent form signed by Defendant was inadequate under the terms of §55-10-406. Defendant's argument turns on the use of the word "consequences" in §406(a)(2). Defendant reasons that the suspension of one's license under § 406(a)(2) is but one "consequence," and thus the use of the plural "consequences" means than an officer must advise a DUI suspect of all the possible consequences of refusing to take a blood test, i.e. the payment of a fee to reinstate a suspended license, and the fact that a refusal to take the test could be admissible in a criminal proceeding as an inference of intoxication.

Although Defendant presents a novel argument, we point out that the sentence in question –"The court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if such driver was not advised of the consequences of such a refusal"–does not describe "consequences" in the abstract. Id. § 406(a)(2). The use of "consequences" in this sentence refers to the consequences flowing from a refusal take a blood test as described in the preceding sentence–namely prosecution under this code section and the suspension a defendant's license if found guilty. Id. The use of the plural "consequences" in this sentence does not require an officer to advise a defendant of all the

possible consequences of refusing to take the test. The plain language of the statute requires only that an officer advise a suspect that if the suspect refuses he may have his license suspended. See State v. John George Kain, No. 03C01-9901-CR-00032, 2000 WL 157944, at * 4, Hamilton County (Tenn. Crim. App., Knoxville, Feb. 15, 2000) perm. app. denied (Tenn. 2000) ("A common sense reading of this statute is that the word "consequences" . . . refers to suspension of the operator's license, which is required by the first sentence of this section."). The implied consent form here contained language that informed Defendant that her license would be suspended if she refused to consent to a blood test. Defendant signed the form. Defendant also testified that Officer Starnes informed her that she would lose her license for a year if she refused to take the test. Defendant is not entitled to relief on this basis.

Defendant next argues that her consent did not constitute a "voluntary, knowing, and intelligent" waiver of her constitutional rights because the consent form failed to advise her of all the possible consequences from a refusal to take a blood test. Specifically, Defendant argues that she should have been informed that she would have to pay a fee to reinstate her license if it were suspended, that her refusal would affect her ability to obtain a restricted license (a limited-use license for employment only), and that a refusal to submit to the test could be used against her in a criminal proceeding. Similarly, Defendant also argues that her consent was not a "voluntary, knowing, and intelligent" waiver of her constitutional rights because the form failed to advise her regarding all the possible consequences from submitting to a blood test. Specifically, Defendant contends that she should have been informed that (1) a test result showing .10% blood alcohol content or higher would be presumptive proof of intoxication in a criminal proceeding; (2) the test results, no matter the percentage, could be used as evidence in a criminal proceeding, (3) if she were to commit subsequent DUI offenses the test results could be used to enhance punishment, and (4) she was entitled to have an additional blood sample taken to be tested by a licensed medical laboratory of her choice.

What is notably absent from Defendant's argument is any reference to specific constitutional rights or constitutional language. Defendant does not point out what rights of Defendant's have been infringed upon. Nor does Defendant pinpoint what portions of the constitution might require a more expansive description of consequences in the consent form. As a result, these challenges are waived. Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988).

Defendant's second issue alleges that the trial court's denial of the motion to suppress as to the initial stop of the vehicle was in error. Defendant contends that Officer Starnes did not have a reasonable articulable suspicion that a crime had been committed or was about to be committed, nor did Defendant commit any traffic infraction in the officer's presence. Defendant thus reasons that the vehicle stop, and Defendant's subsequent arrest, are illegal. We agree.

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Similarly, article I, section 7 of the Tennessee Constitution guarantees that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures .

-5-

. . ." Tenn. Const. art. I, § 7. These constitutional provisions are designed to safeguard the privacy and security of individuals against arbitrary invasions of government officials. State v. Keith, 978 S.W.2d 861, 869 (Tenn. 1998) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967). The Fourth Amendment protects people, not places, and thus the amendment protects persons against state action whenever a person has a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., dissenting). Unless it falls within a specifically established and well delineated exception, a search or seizure conducted without a warrant is per se unreasonable. Keith, 978 S.W.2d 865. Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. Id.

One established and well recognized exception to the warrant requirement is the seizure known as the investigatory automobile stop. See Ornelas v. United States, 517 U.S. 690, 693 (1996); Keith, 978 S.W.2d at 866; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). A police officer may make an investigatory stop of a motor vehicle when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Ornelas, 517 U.S. at 690; Keith, 978 S.W.2d at 866; Watkins, 827 S.W.2d at 294. The United States Supreme Court has noted that "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, non-technical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas, 590 U.S. at 695 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). A minor traffic violation also constitutes probable cause for an investigatory stop even when the violation is a pretext. State v. Vineyard, 958 S.W.2d 730,  (Tenn. 1997). A vehicle is seized and an investigatory stop commences when a law enforcement officer activates the "blue lights" on the police vehicle. State v. Yeargan, 958 S.W.2d 626, 635 (Tenn. 1997) (citations omitted).

This Court must uphold a trial court's findings of fact resulting from a suppression hearing unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The burden is on the defendant to demonstrate that the evidence preponderates against the trial court's findings. State v. Harts, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. Odom, 928 S.W.2d at 23. However, the application of the law to the facts is a question of law which is reviewed de novo on appeal. Harts, 7 S.W.3d at 84.

Here, the stop of Defendant's van was based entirely on Officer Starnes' observations; the video unit on Officer Starnes' patrol vehicle did not record any illegal or suspicious actions by Defendant's van. Officer Starnes testified that the reason his attention was drawn to the vehicle was because the van entered a "merge" lane–essentially a turn lane–briefly crossed over the white solid line at the right shoulder of the turn lane, and then exited the turn lane to the left and resumed travel in the right-hand lane of Lee Highway. The Officer did not testify as to any other suspicious activity by the van.

Officer Starnes' stop of Defendant's van may only be upheld provided that Officer Starnes had a reasonable articulable suspicion that a crime had been or was about to be committed or if Officer Starnes had evidence that Defendant committed a traffic violation. As to reasonable suspicion, we do not think that facts here demonstrate a reasonable articulable suspicion that a crime has been or is about to be committed. It is perfectly plausible that a motorist may initiate a right turn, realize that he or she does not want to make the turn, and resume travel in the correct lane having, ever so briefly, crossed the solid line on the right-side shoulder. The fact that there are bars, clubs, or other commercial enterprises that serve alcohol in the immediate vicinity does not change this result. Reasonable suspicion justifying the stop of a vehicle does not spring into existence simply because a vehicle is operated legally, but not perfectly, near an establishment that serves alcohol.

We also note that the suspicious activity observed by Officer Starnes does not constitute, in and of itself, a traffic violation. Motorists are liable to change their mind when driving, and thus it is not unusual for a vehicle to enter a turn lane and then return to a travel lane without making a turn. Nor do we think that a vehicle that briefly crosses the solid white line on the shoulder is committing a traffic violation. Our laws provide that "[w]henever any roadway has been divided into two (2) or more lanes for traffic . . . . A vehicle shall be <u>driven</u> as nearly as practicable entirely within a single lane," Tenn. Code Ann. § 55-8-123(a) (1997) (emphasis added), but we do not think that a momentary drift out of a lane constitutes <u>driving</u> a vehicle outside of a single lane. <u>See</u> <u>United States v. Freeman</u>, 209 F.3d 464, 466 (6th Cir. 2000) (weaving into emergency lane one time for a few feet not a violation of § 55-8-123). <u>Compare</u> <u>State v. Guy Binette</u>, No. 03C01-9802-CR-00075, 1999 WL 427606, Hamilton County (Tenn. Crim. App., Knoxville, June 28, 1999) <u>perm. to appeal granted</u> (Tenn 1999) (reasonable suspicion present when video unit on police cruiser videotaped repeated weaving within lane of travel for distance of more than two miles).

In sum, if we allow Defendant's conviction to stand, law enforcement officers will have a reasonable articulable suspicion to stop any vehicle in the vicinity of drinking establishments during late hours of the night if the vehicle is operated in less than perfect fashion--even if the operation of the vehicle is in compliance with our traffic laws. We feel that the United States Constitution and the Constitution of Tennessee require more. In hindsight–which we are not permitted to use as a basis for our decision in this type of case–the stop resulted in the removal of a driver where the evidence indicated she was intoxicated. As unpleasant as our conclusion today may be to some, however, the result reached in this case is required by our constitutions, wherein "the end does not justify the means." Defendant's conviction is reversed. The case is remanded to the Hamilton County Criminal Court, and the charge against Defendant shall be dismissed.

_____
THOMAS T. WOODALL, JUDGE