IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1997 SESSION

FILED

April 8, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9702-CR-00056 |
| | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable J. Randall Wyatt, Jr., Judge |
| | ) | |
| CEDRIC K. HARTS, | ) | (Rape) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Carlton M. Lewis
208 Third Avenue North
Nashville, TN 37201

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
          and
Elizabeth B. Marney
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Victor S. Johnson, III
District Attorney General
          and
Katrin N. Miller
Assistant District Attorney General
Washington Square
222 2nd Avenue North
Nashville, TN 37201-1649

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Cedric K. Harts, was convicted by a jury in the Davidson County Criminal Court for rape, a Class B felony. He received a nine-year sentence as a Range I, standard offender. In this appeal as of right, he contends that:

> (1) the trial court erred by refusing to suppress his statement to police given at the time of his arrest in violation of his rights provided by <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966); and

> (2) the trial court erred by instructing the jury regarding minimum release eligibility from confinement in violation of due process and separation of powers.

We affirm the trial court.

The case relates to the defendant sexually penetrating a thirteen-year-old girl. The victim testified that the defendant forced himself upon her. At trial, the defendant admitted performing cunnilingus and having sexual intercourse with the victim, but he claimed that she acted voluntarily. He acknowledged that he denied having sexual contact with the victim when he was questioned by Detective Stan Marlar.

## I. MOTION TO SUPPRESS

The defendant contends that the trial court erred by denying his Motion to Suppress a statement he gave to Detective Stan Marlar at the time of his arrest. He claims that he did not voluntarily waive his rights to remain silent and to have counsel present as provided in <u>Miranda</u>. The state responds that the record supports the trial court's determination that the defendant's waiver of his rights and subsequent statement were knowing and voluntary.

At the suppression hearing, Detective Marlar testified that he asked the defendant to come to the criminal justice center to talk about a sexual assault complaint

2

that had been filed against him and that the defendant appeared voluntarily. He said that when he asked the defendant to come to the station, he did not intend to arrest the defendant but only to hear the defendant's version of the events. He said that although he felt like he had enough information to arrest the defendant, he needed to hear the defendant's version because that might change his assessment that he had probable cause.

Detective Marlar testified that as he was advising the defendant of his rights, the defendant stated that he wanted a lawyer. Detective Marlar then told the defendant that he was under arrest. Detective Marlar testified that the defendant then stated that he wanted to talk. Detective Marlar said he told the defendant that the interview had become a custodial interview, and he said he advised the defendant of his constitutional rights again. The defendant signed a rights waiver form and gave a statement in which he admitted to seeing the victim on the day of the offense but repeatedly denied having any sexual contact with the victim.

Detective Marlar testified that he placed the defendant under arrest after the defendant requested an attorney because he was "not going to roll over and let him leave that office when he had a chance to say something." Upon questioning by the trial court, he agreed that he had worked on rape cases in the past in which he had given a suspect a chance to talk, but the suspect had requested an attorney. He said that in those cases in which he felt he did not have enough probable cause to make an arrest, he let the suspects leave. He said that in the present case, though, he felt like he had enough probable cause to arrest the defendant based on the victim's statement.

The conversation between Detective Marlar and the defendant was taped. The transcript of the conversation includes the following relevant portion:

> DET. MARLAR: Today's date is August 18, 1994. The time of 5:55 p.m. Detective Stan Marlar will be conducting the

3

interview. I will be interviewing Cedric Harts, H-A-R-T-S, Case No. 94-271468. Cedric, your allegation is that, uh, you have raped [the victim], and this occurred on August the 16th. Do you know [the victim]?

CEDRIC HARTS: Yes, I know [the victim].

DET. MARLAR: Where do you know her from?

CEDRIC HARTS: I met her. . .

DET. MARLAR: First of all, first of all, this is, did you sign in as a visitor?

CEDRIC HARTS: Yes, sir.

DET. MARLAR: All right. This is what we call a non-custodial interview. You can stop at any time you want to. If it starts to be where it's, uh, you say something incriminating. . .

CEDRIC HARTS: Uh huh.

DET. MARLAR: Then I will advise you of your rights.

CEDRIC HARTS: O.K.

DET. MARLAR: I don't want to violate your constitutional rights.

CEDRIC HARTS: O.K.

DET. MARLAR: You are free to go, but you're here voluntarily.

CEDRIC HARTS: Uh huh.

DET. MARLAR: Uh, you came down, uh, and I just want to get your side of the story.

CEDRIC HARTS: O.K.

DET. MARLAR: Now, if you think you're gonna make a incriminating statement, ya know, think about, cause you don't have to. You have the right to have the presence, to have an attorney present when this interview is going on, but since it's non-custodial, uh, we don't normally advise you of your constitutional rights.

CEDRIC HARTS: All right.

DET. MARLAR: If you cannot afford an attorney, the State will provide you with one. You know, you (inaudible).

CEDRIC HARTS: I would rather talk to an attorney so I. . .

DET. MARLAR: You don't want to say anything at all?

4

CEDRIC HARTS: I don't want to say nothing about this cause I don't know anything that's going on. I think somebody trying to set me up, so I'd just rather talk to an attorney about it.

DET. MARLAR: You mean you came down here to tell me you didn't want to talk to me about it.

CEDRIC HARTS: Yes, sir. Is that all right with you?

DET. MARLAR: Oh, yeah. Absolutely it's all right with me.

CEDRIC HARTS: Because uh. . .

DET. MARLAR: So I don't have any choice right now then.

CEDRIC HARTS: I think. . .

DET. MARLAR: Cedric, you're under arrest for rape. I don't have any choice.

CEDRIC HARTS: I'm under arrest?

DET. MARLAR: Yes, sir. Um, and I'm gonna have people come down and sign a warrant on you.

CEDRIC HARTS: I didn't. . .

DET. MARLAR: Uh, there's nothing. . .

CEDRIC HARTS: (Inaudible).

DET. MARLAR: (Inaudible). I asked you if you wanted to come down and you said yes you did. I asked you, uh, I told you it was a sexual assault allegation, that I wanted to get your side of the story. And if I don't have your side of the story, then I have no choice, I mean, I absolutely. . .

CEDRIC HARTS: O.K. You asked me did I have the choice for an attorney, I would like to talk to somebody because. . .

DET. MARLAR: But then. . .

CEDRIC HARTS: I want to know what this is all about.

DET. MARLAR: All right, and I understand that. But once you say you want an attorney, that's it.

CEDRIC HARTS: O.K.

DET. MARLAR: I can't ask you anything else.

CEDRIC HARTS: O.K. Let's go.

DET. MARLAR: So you're under arrest.

CEDRIC HARTS: No, I would like to talk on the tape.

5

DET. MARLAR: No, sir. You've asked for an attorney, and I don't have a choice. Now you gonna have to make it plain that you want to talk.

CEDRIC HARTS: Yes, I want to talk. I want to make it plain that I would like to talk.

DET. MARLAR: Do you, all right, are you being coerced?

CEDRIC HARTS: No.

DET. MARLAR: Are you being threatened?

CEDRIC HARTS: No. You asked me did I like to talk to an attorney first or what, I just said an attorney because I don't know if I would say something that would be, ya know, intimidating [sic] to myself or what. I don't know what to say exactly. That's why I said. . .

DET. MARLAR: Yeah, all you gotta do is tell the truth.

CEDRIC HARTS: Yeah, O.K.

DET. MARLAR: Well, let me go ahead and do it in the proper way then.

CEDRIC HARTS: All right.

DET. MARLAR: Uh, I'm gonna read this off of the custodial Miranda warning card. You have the right to remain silent.

CEDRIC HARTS: Uh huh.

DET. MARLAR: You can give up that right, and anything you say can be used against you in the Court. Do you wish to give up that right and answer any questions at this time?

CEDRIC HARTS: I wish to talk on the tape, yes.

DET. MARLAR: O.K. You have the right to a lawyer before any questioning and have a lawyer with you during questioning. If you cannot afford a lawyer, one will be provided to you at no cost. Do you understand these rights that I just explained to you?

CEDRIC HARTS: Yes, sir.

DET. MARLAR: Do you wish to give up these rights I've explained to you and answer any questions now? Do you wish to give up those rights?

CEDRIC HARTS: No.

DET. MARLAR: No, you don't want to give them up?

CEDRIC HARTS: I mean, I just talk on the tape.

6

DET. MARLAR: O.K.  If you chose to answer questions now, you may stop answering at any time.

CEDRIC HARTS: O.K.

DET. MARLAR: Now, what I want to do to [sic] is since that's on tape, I need to go ahead and get you to sign a form, just to make sure, and I'm gonna pause the tape.  The time is 1759, and I'm gonna pause the tape and get the form.

DET. MARLAR: The tape, the tape is being turned back on at 1800 hours, Complaint No. 94-271468.

. . .

DET. MARLAR: Are you intoxicated now?

CEDRIC HARTS: No.

DET. MARLAR: Are you on any type of medication?

CEDRIC HARTS: Uh, no sir.

DET. MARLAR: O.K., these are your rights.  Before we ask you any questions, you must understand your rights. You have the right to remain silent.  Anything you say can be used against you in Court.  You have the right to talk to a lawyer for advice before we ask you any questions and have him with you during questioning.  If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.  If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time.  You also have the right to stop answering at any time until you talk to a lawyer.  All right.  It says I, Cedric "K"?

CEDRIC HARTS: "K", uh huh.

DET. MARLAR: Harts, H-A-R-T-S, have read this statement or had read [sic] this statement read to me by Detective Stan Marlar.  I understand my rights and know what my rights are and I am willing to make a statement and answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing.  No promises or threats have been [sic] to me and no pressure or coercion of any kind has been used against me.  Do you agree to that statement?

CEDRIC HARTS: Yes, sir.

DET. MARLAR: O.K. Cedric, I need you go sign this, please.

CEDRIC HARTS: Sign it. . .

DET. MARLAR: Where the "X" is.

CEDRIC HARTS: Time?

7

> DET. MARLAR: Time is 6:02. O.K. Now the allegations are
> that on the 16th of August, which is what a couple day ago?

Following the suppression hearing, the trial court entered a written order denying the defendant's motion. Although the court never explicitly stated that the defendant knowingly and voluntarily waived his rights, the court did make a finding that (1) Detective Marlar terminated the interview when the defendant requested an attorney, (2) the defendant requested to continue the interview, (3) Detective Marlar informed the defendant of his <u>Miranda</u> rights, and (4) the defendant executed an oral and written waiver of those rights and stated that he wanted to proceed with the interview.

On appeal, the trial court's findings of fact at the conclusion of a suppression hearing will be upheld unless the evidence preponderates otherwise. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. <u>Id.</u> However, the application of the law to the facts is a question of law which is reviewed <u>de novo</u> on appeal. <u>State v. Yeargan</u>, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant contends that he did not knowingly and voluntarily waive his rights to silence and to an attorney. The gist of his argument is that because Detective Marlar initially told him he was free to go at any time but then arrested him when he asserted his right to an attorney, he believed that if he waived his right to an attorney and gave a statement, he would be allowed to leave. The state contends that after the defendant requested an attorney, Detective Marlar ended the interrogation but that the defendant subsequently initiated further conversation. The state argues that the defendant knowingly and voluntarily waived his rights.

8

In Miranda, the United States Supreme Court determined that a defendant's statements made during a custodial police interrogation are only admissible if the state establishes that the defendant was advised of certain constitutional rights, including the right to an attorney and the right to be silent. 384 U.S. at 444, 86 S. Ct. at 1612. Once a suspect makes an unequivocal request for an attorney, all interrogation must cease unless the suspect initiates conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1884-85 (1981); State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994). If the suspect initiates conversation, the state must show that the suspect knowingly and voluntarily waived his rights. Miranda, 384 U.S. at 475, 86 S. Ct. at 1628 (citing Escobedo v. Illinois, 378 U.S. 478, 490, 84 S. Ct. 1758, 1764 (1964)). In this respect, "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation . . . ." Edwards, 451 U.S. at 434, 101 S. Ct. at 1885.

The facts of this case show that when the defendant requested an attorney, he was not yet in custody. Thus, Detective Marlar's further questioning of the defendant did not violate his rights at that time. However, the interrogation became custodial when Detective Marlar placed the defendant under arrest. At this point, the defendant was in custody and had already invoked his right to counsel. Thus, under Edwards, all interrogation should have ceased, and the defendant should have been provided with an attorney.

Rather than cease questioning and provide the defendant with an attorney, the following colloquy took place between Detective Marlar and the defendant:

CEDRIC HARTS: I'm under arrest?

DETECTIVE MARLAR: Yes, sir. Um, and I'm gonna have people come down and sign a warrant on you.

CEDRIC HARTS: I didn't . . .

9

> DETECTIVE MARLAR: Uh, there's nothing . . .
>
> CEDRIC HARTS: (Inaudible)
>
> DETECTIVE MARLAR: (Inaudible). I asked you if you wanted to come down and you said yes you did. I asked you, uh, I told you it was a sexual assault allegation, that I wanted to get your side of the story. And if I don't have your side of the story, then I have no choice, I mean, I absolutely . . .

Conversation continued between the detective and the defendant until the defendant finally said he wanted to talk on tape.

Once a suspect makes an unequivocal request for counsel, any response by the suspect to further interrogation cannot be used to cast doubt upon the clarity of the original request. State v. Mosier, 888 S.W.2d 781, 785 (Tenn. Crim. App. 1994). The circumstances surrounding the interview of the defendant, from the time he arrived until the time he made a statement, point to an atmosphere of coercion. First, when the defendant initially arrived, Detective Marlar assured him that he was free to go and could leave at any time. When the defendant stated that he wanted an attorney, Detective Marlar questioned the defendant's assertion of his right to counsel, saying, "You don't want to say anything at all?" and "You mean you came down here to tell me you didn't want to talk to me about it." When the defendant continued to assert his right to counsel, Detective Marlar placed him under arrest. At that point, all questioning should have ceased, and the defendant should have been provided with an attorney. However, Detective Marlar continued his conversation with the defendant until the defendant finally told the detective that he wanted to talk on tape.

The state asserts that the defendant initiated discussions with the detective by stating, "Yes, I want to talk. I want to make it plain that I would like to talk." What the state fails to acknowledge, however, is that the questioning never ceased. The detective continued a dialogue with the defendant after he requested an attorney and was placed under arrest. Furthermore, the defendant's statement that he wanted

to talk was preceded by the detective telling the defendant, "[Y]ou . . . have to make it plain that you want to talk." We cannot conclude that the defendant knowingly and voluntarily waived his rights and initiated the discussion with the detective when the record shows that the detective maintained a conversation with the defendant, then instructed the defendant on how to clarify the record to ensure that it reflected clear initiation of conversation. This series of events reflects a failure to abide by the Edwards requirement that interrogation cease until counsel is present, not an independent initiation of conversation by the defendant. We conclude that the defendant's statement should have been suppressed.

Having determined that the defendant's statement to Detective Marlar should have been suppressed, we must now determine whether its admission into evidence during the state's case-in-chief was harmless beyond a reasonable doubt in light of the defendant's trial testimony. See T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a). We conclude that it was.

At trial, the defendant admitted having sexual contact with the victim but claimed that the contact was consensual. Obviously, this contradicts the defendant's statement to Detective Marlar that he did not have sexual contact with the victim. The state questioned the defendant about the differences between his statement to Detective Marlar and his testimony on direct examination, and the defendant stated that he lied to Detective Marlar.

A statement that is inadmissible against a defendant in the state's case-in-chief because of a Miranda violation may properly be used for impeachment purposes to attack the testifying defendant's credibility. Harris v. New York, 401 U.S. 222, 225-26, 91 S. Ct. 643, 645-46 (1971); State v. Hopper, 695 S.W.2d 530, 538 (Tenn. Crim. App. 1985). This exception to the exclusionary rule rests on the principle

11

that the "shield provided by <u>Miranda</u> cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." <u>Harris</u>, 401 U.S. at 226, 643 S. Ct. at 646. Viewed in this light, we conclude that the erroneous admission of the defendant's statement in the state's case-in-chief is harmless beyond a reasonable doubt because the statement was properly used during cross-examination to impeach the defendant's credibility.

## II. INSTRUCTION ON RELEASE ELIGIBILITY

The defendant contends that the trial court erred by instructing the jury on the approximate calculation of his earliest release eligibility date pursuant to T.C.A. § 40-35-201(b) (1997) (repealed 1998).[1] He argues that the statute is unconstitutionally vague and violates due process, relying on <u>Farris v. State</u>, 535 S.W.2d 608, 612-13 (Tenn. 1976). The state argues that the defendant waived the issue because he requested the instruction and that, in any event, the statute is constitutional.

Tennessee Code Annotated § 40-35-201(b) (1997) (repealed 1998) provides that "upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses." When such a charge is requested by either party, section (b)(2)(A)(i) provides:

> When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage

---

[1] Effective May 18, 1998, the Tennessee General Assembly amended T.C.A. § 40-35-201, deleting subsection (b) and replacing it with a new provision that provides that juries in non-capital cases shall not be instructed on the possible penalties for the offense charged or lesser included offenses. This amendment does not apply to cases tried before the effective date of the amendment. 1998 Tenn. Public Acts 1041, § 2.

established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable.

The trial court instructed the jury that it should weigh and consider the release dates as provided in this section.

First, the state argues that the defendant waived the issue because he requested an instruction on the range of punishment pursuant to T.C.A. § 40-35-201. See T.R.A.P. 36(a). However, the record shows that although the defendant did request an instruction on the range of penalties, he also requested that the trial court not instruct the jury on his earliest release eligibility date. The defendant argued that the particular provision of the statute dealing with release eligibility was unconstitutionally vague and violative of due process. Under these facts, we do not view the issue to be waived.

With respect to the defendant's challenge to the constitutionality of the statute, our supreme court recently addressed the same claims the defendant makes in the present case in State v. King, 973 S.W.2d 586, 587 (Tenn. 1998). In King, the defendant argued that T.C.A. § 40-35-201(b) was unconstitutional because it violated his due process rights under both the United States Constitution and Tennessee Constitution. The defendant in King, like the defendant in the present case, relied on Farris v. State to support his argument that the statute was unconstitutionally vague and impossible to apply. Our supreme court distinguished the statute at issue in Farris, holding that T.C.A. § 40-35-201(b), in contrast, "does not leave a jury to speculate about release eligibility dates, good time credits and safety valve release provisions." King, 973 S.W.2d at 589.

The court in King concluded that the statute provided explicit and unambiguous guidance such that the defendant's claim of vagueness was without

13

merit. Id. at 950. We believe that our supreme court's analysis in King applies to the present case, and we conclude that the statute is not unconstitutional as applied in the present case. See also, State v. Rachel Marie Green, No. 01C01-9706-CR-00223, Davidson County (Tenn. Crim. App. Oct. 12, 1998), applic. filed (Tenn. Dec. 11, 1998) (holding that the King analysis also applies when a jury is instructed to "weigh and consider" the meaning of a sentence of imprisonment, as opposed to being instructed that the information is "for your information only"); but cf. State v. Jason M. Weiskopf, No. 02C01-9611-CR-00381, Shelby County (Tenn. Crim. App. Dec. 4, 1998) ("weigh and consider" renders the instruction reversible error). In any event, the fact that the defendant admitted sexual penetration and was only convicted of rape, the least offense considered by the jury, reflects that the instruction was utterly inconsequential.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
John H. Peay, Judge

_____
David H. Welles, Judge

14