# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
December 13, 2011 Session

## STATE OF TENNESSEE v. DAVID DWAYNE BELL

### Appeal from the Circuit Court for Sevier County
### No. 14953III     Rex Henry Ogle, Judge

### No. E2011-01241-CCA-R3-CD - Filed August 31, 2012

The defendant was indicted on one count of driving under the influence (DUI) and one alternative count of driving with a blood alcohol content of .08 or higher. Prior to trial, the defendant filed a motion to suppress certain evidence obtained by the police on the grounds that the defendant was arrested without probable cause. The trial judge granted this motion and ultimately dismissed both counts. On appeal, the State argues that the trial court erred by determining that the arresting officer did not have probable cause. After reviewing the record and the arguments of the parties, we conclude that the trial court committed no error and affirm its judgment accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; James Bruce Dunn, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellant, State of Tennessee.

Bryan E. Delius (at trial), and Bryce W. McKenzie, Sevierville, Tennessee (on appeal), for the appellee, David Dwayne Bell.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In this appeal, the State claims that the trial court erred by granting the defendant's

motion to suppress the results of a blood alcohol test that was obtained as a result of the defendant's arrest. On January 12, 2010, the defendant was indicted on one count of driving under the influence (DUI) and one alternative count of driving with a blood alcohol content (BAC) in excess of .08, in violation of Tennessee Code Annotated section 55-10-401. The defendant's indictment stemmed from events that occurred during a traffic stop on May 13, 2009. On April 19, 2011, the trial court held a hearing on the defendant's pre-trial motion to suppress, at which time the following evidence was presented:

Officer Timothy Russell of the Sevierville Police Department took the stand and testified that he had considerable training in DUI enforcement. Officer Russell testified that on May 13, 2009, he was on routine patrol when he was "handed a really bad tasting sandwich by the Sevier County Sheriff's Department." Officer Russell clarified that he was referring to a request that he had received that evening from "a county unit" for backup on an ongoing traffic stop for suspicion of drunk driving. Officer Russell testified that when he arrived at the scene of this traffic stop, the defendant was already outside of his vehicle and in the company of a Deputy Parton[1] of the Sevier County Sheriff's Department.

Officer Russell testified that when he approached the defendant he could "smell an odor of alcohol." He testified that he spoke with the defendant, who proceeded to tell him that he had consumed some alcoholic drinks earlier in the evening. Officer Russell testified that he then asked the defendant to perform several field sobriety tests, including tests known as "the four-finger count," saying the alphabet "from the letter G to the letter S," identifying the year he was born, and identifying the year that he had his fifth, sixth, or seventh birthday. Officer Russell testified that the defendant performed "[t]o the best of my recollection . . . okay" on these four field sobriety tests.

In addition, Officer Russell testified that he had the defendant perform "the one-legged stand" test, which involved the defendant's counting to thirty while standing on one leg. Officer Russell testified that the defendant was able to successfully complete this task, *albeit* while "using his arms to balance" and "leaning to the left kind of." Officer Russell testified that the last test he administered to the defendant was one called "the nine-step walk-and-turn." Officer Russell testified that the defendant's performance on this test "wasn't as bad as a lot that I've had but, you know, based on my experience with what I've seen working the street, I was under the feeling [that the defendant] was under the influence of alcohol." Officer Russell testified that based on the defendant's performance on "the nine-step walk-and-turn" test and based on the fact that "Deputy Parton" had

---

[1] The full name and precise identity of the county police officer at issue cannot be discerned from the record. He is identified as "Officer Parton" in the transcript from the suppression hearing and in the State's brief on appeal.

-2-

informed him that the defendant had been caught driving "southbound in the northbound lane of the Parkway," he decided that it was unsafe for the defendant to be operating a motor vehicle, and he placed him under arrest.

Officer Russell also testified that his vehicle was equipped with a video camera, which had captured a recording of his entire encounter with the defendant on the night in question. Officer Russell identified and authenticated a copy of the video that was captured by his vehicle's recording equipment, which was entered into evidence and played for the trial judge.

On cross-examination, Officer Russell testified that he never personally saw the defendant operating his vehicle on the night in question. Officer Russell testified that the defendant quickly acknowledged to him that he had made a wrong turn, and he told him that he had immediately realized his error. Officer Russell testified that he could not recall how well the defendant had done on some of the field sobriety tests that he gave to the defendant. Officer Russell testified that the defendant's mental functioning was "excellent" with respect to the counting-based sobriety tests that he administered. Officer Russell also testified that the defendant did not "do anything wrong" on the alphabet test or the birthday test and that the defendant's mental functioning appeared to be "excellent" at the time when these tests were administered.

Officer Russell further testified during cross-examination that he had left the blue lights on his vehicle flashing throughout the time period that he administered the field sobriety tests to the defendant. He testified that it was possible for flashing blue lights to interfere with an individual's ability to pass the "one-legged stand" test and the "nine-step walk-and-turn" test. Officer Russell admitted that he had been trained not to leave the blue lights flashing on his car while a person was performing field sobriety tests. Officer Russell testified that flashing lights notwithstanding, the defendant had been able to stand on one leg and count for the requisite number of seconds required to pass the "one-legged stand" test. Officer Russell also testified that during the "nine-step walk-and-turn" test, the defendant took the correct number of steps, and he took them in a straight line. Officer Russell testified the defendant failed the "nine-step walk-and-turn" test because he "did not plant and turn as I had instructed him to." Officer Russell acknowledged that the defendant did not "stagger, stumble or step off of the line" during this test. Officer Russell testified that he placed the defendant under arrest immediately after he finished the "nine-step walk-and-turn" test.

The State presented no further evidence, and the trial court proceeded to determine whether Officer Russell had probable cause to arrest the defendant at the conclusion of the field sobriety tests. The trial court acknowledged that the defendant had made a serious driving error by turning into the wrong side of the street. However, the trial judge noted that

there was construction going on nearby and that numerous other individuals had made a wrong turn similar to the one made by the defendant in that general area. The trial court stated, "I honestly think that he did pretty dog-gone good on the field sobriety tests, better than most I've seen." The trial judge added "I couldn't pass them as well as he did" while completely sober. Consequently, the trial court ruled that Officer Russell did not have probable cause to arrest the defendant and that a blood test that was obtained as a result of the unlawful arrest, should be suppressed as the fruit of the poisonous tree. The trial court dismissed the indictment against the defendant for lack of evidence. The State has appealed.

**ANALYSIS**

The sole question before the court is whether the trial court erred in ruling that Officer Russell did not have probable cause to arrest the defendant. After thoroughly reviewing the record in this matter, we conclude that the trial court's ruling was correct.

On appeal, the losing party bears the burden of demonstrating that a trial court's decision concerning a motion to suppress was erroneous. *State v. Harts*, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing and all reasonable inferences to be drawn therefrom. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Any conclusions concerning the credibility of witnesses, the weight and value to be given their testimony, and the resolution of any conflicts in the evidence are the trial judge's domain and will not be disturbed on appeal unless the record evidence preponderates against them. *Id.* "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews *de novo*." *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

Both the federal and state constitutions contain provisions protecting an individual against unlawful arrest. *See* U.S. CONST. AMEND. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); TENN. CONST, Art. 1, Sec. 7 ("[T]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures."). For an officer's warrantless arrest of an individual to comply with these provisions, it must generally be supported by probable cause. *E.g., Beck v. Ohio,* 379 U.S. 89, 91 (1964) ("Whether th[e] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it . . . ."). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (*quoting Ornelas v. United States*, 517 U.S. 690, 696 (1996)); *see also* T.C.A. § 55-10-406 (supp. 2009) (permitting administration of a blood test "at the

direction of a law enforcement officer having reasonable grounds to believe the person was driving under the influence of alcohol, a drug, any other intoxicant" or in violation of certain specified statutes).

When a defendant has been arrested for the specific crime of driving under the influence, "[t]he question of whether the arrest was supported by probable cause depends upon whether at the time the arrest was made there were facts and circumstances within the officer's knowledge which would warrant a man of prudence and caution in believing that the defendant had committed the offense of D.U.I." *State v. Evetts*, 670 S.W.2d 640, 642 (Tenn. Crim. App. 1984). "*All* information in the officer's possession, fair inferences therefrom, and observations, including past experiences, are generally pertinent." *Id.* (emphasis added). Considering all of the information that was available to Officer Russell at the time of the defendant's arrest, we agree with the trial court that there was not probable cause to arrest the defendant.

The State claims that "the record is replete with facts, known to Officer Russell at the time, that support his belief that the defendant committed the offense of DUI." We agree that there were several facts known to Officer Russell at early points during the traffic stop that would have led a person of reasonable prudence and caution to suspect that the defendant might have been driving under the influence. As the State points out, Officer Russell testified that he had information given to him by Deputy Parton indicating that the defendant had been caught driving on the wrong side of the road. Officer Russell also testified that he detected the odor of alcohol when he approached the defendant, and the defendant admitted to him that he had been drinking earlier. The trial court appears to have credited Officer Russell's testimony concerning these facts, and after becoming aware of them, any reasonably prudent officer would have been justified in suspecting the defendant of DUI and in investigating further.

However, by the time Officer Russell actually arrested the defendant, his observations and the information available to him had changed considerably. After becoming aware of the facts discussed above, Officer Russell chose to administer at least six separate field sobriety tests and had the opportunity to witness the results. After these tests were finished, the defendant's performance on them became information available to the arresting officer and consequently relevant to any determination of whether probable cause existed.

We interpret the slightly more colorful comments made by the trial court in its ruling from the bench on the defendant's suppression motion as a finding, as a factual matter, that the defendant passed all of the field sobriety tests that he was given. As we have discussed, as the prevailing party, the defendant is entitled to the strongest legitimate view of the evidence presented at the suppression hearing and to all reasonable inferences to be drawn

from that evidence. After reviewing the videotape of the traffic stop and the remainder of the record in this matter, we cannot conclude that the record evidence preponderates against the trial court's factual finding in this regard.[2]

Applying the law to these facts, once Officer Russell had witnessed the defendant's uninterrupted success on a battery of field sobriety tests, there was not probable cause to arrest the defendant for DUI given the totality of the circumstances and all of the information available to the officer. The State is not required to perform field sobriety tests on an individual prior to arresting him or her for driving under the influence. However, if the State chooses to administer such tests, it may not simply disregard the results if the individual involved performs them successfully. Had the defendant failed any of the field sobriety tests, we have no doubt that the State would have argued that the defendant's failure provided strong evidence in support of probable cause. We believe that the defendant's consistent success on a battery of such tests is likewise compelling evidence – in the other direction. Consequently, on these facts we conclude that the trial court did not err in concluding that after the defendant had passed all the field sobriety tests, an officer of prudence and caution would no longer have probable cause to believe that the defendant had been driving under the influence.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[2] As discussed above, Officer Russell's actually testimony was that the defendant performed satisfactorily on most, but not all, of these tests. However, the trial court was free to discredit this portion Officer Russell's testimony in light of the officer's further admission that his failure to follow proper police procedure by turning off his flashing blue lights while administering the field sobriety tests may well have significantly interfered with the defendant's performance on the remaining tests.