IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 9, 2019

## STATE OF TENNESSEE v. WILLIAM SCOTT HUNLEY

**Appeal from the Circuit Court for Madison County**
**No. 17-154    Roy B. Morgan, Jr., Judge**

_____

**No. W2018-00648-CCA-R3-CD**

_____

The Defendant, William Scott Hunley, was convicted of possession with intent to sell more than 0.5 grams of methamphetamine, possession with intent to deliver more than 0.5 grams of methamphetamine, possession of marijuana, and possession of drug paraphernalia. He received an effective sentence of twenty-five years. On appeal, the Defendant challenges only his conviction of possession with intent to sell methamphetamine, arguing that the evidence is insufficient to support the verdict. He also challenges the trial court's denial of his motion to suppress. Upon reviewing the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, William Scott Hunley.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jody Pickens, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

On the evening of July 22, 2016, officers with the Madison County Narcotics Unit were conducting surveillance of a hotel in Jackson. The officers had received a tip that methamphetamine was being manufactured and sold out of two hotel rooms. The officers

watched as the Defendant and his minor son pulled into the parking lot and approached one of the rooms. Sergeant Samuel Gilley and Lieutenant Chris Long approached the Defendant and explained they had been notified that methamphetamine was being manufactured and sold out of the room he was about to enter. The Defendant agreed to allow the officers to search his room and told the officers that there might be marijuana in the room. Sergeant Gilley testified that the Defendant gave written consent to the search of his hotel room, and the written consent form was entered into evidence.

Sergeant Gilley testified that he searched the room while Lieutenant Long talked to the Defendant. Sergeant Gilley found a small glass jar containing marijuana in close proximity to a desk. He also found a piece of brown paper with names and numbers written on it, which was "consistent with what I would call a drug ledger." He testified based on his experience the ledger is "a perfect indication" of someone selling drugs rather than using drugs. At that point, Sergeant Gilley asked the Defendant for permission to search his truck. According to both Sergeant Gilley and Lieutenant Long, the Defendant consented to the search.

Sergeant Gilley found a potato chip bag in a pocket located on the back of the front passenger's seat. There were two plastic bags inside the potato chip bag. One bag contained 3.55 grams of methamphetamine, and the other bag contained 8.92 grams of marijuana. Sergeant Gilley also found a set of digital scales. When Sergeant Gilley confronted the Defendant about what he had found, the Defendant began begging the officers to not take him to jail. Sergeant Gilley testified that the Defendant offered to aid in other narcotics investigations. Sergeant Gilley and Lieutenant Long decided not to arrest the Defendant because they believed he could assist in other investigations. Sergeant Gilley further testified that at the time of the search the Defendant did not seem to be under the influence of any narcotic. On cross-examination, both Lieutenant Long and Sergeant Gilley admitted that they had not observed the Defendant selling methamphetamine.

The Defendant also testified during the trial. He admitted that he had methamphetamine and marijuana in his truck, but claimed that he had intended to use it himself. He testified that he has been using methamphetamine for approximately sixteen years. He testified that neither Lieutenant Long nor Sergeant Gilley ever asked him if he was selling methamphetamine. The Defendant disputed consenting to the search of his truck. According to the Defendant, he only agreed to let the officers search his truck after they threatened to call the Department of Children Services to remove his son if he did not allow the officers to search his truck. Additionally, the Defendant claimed that the ledger was not his and that it was not in his handwriting.

The State recalled Sergeant Gilley as a witness. Sergeant Gilley testified that he asked the Defendant if he was selling methamphetamine and the Defendant responded that "he wasn't doing nothing big."

The jury returned a verdict convicting the Defendant of possession of methamphetamine with intent to sell more than 0.5 grams, possession of methamphetamine with intent to deliver more than 0.5 grams, possession of marijuana, and possession of drug paraphernalia. The trial court merged the first two counts and sentenced the Defendant to an effective twenty-five-year sentence.

## ANALYSIS

The Defendant argues that the evidence presented at trial is insufficient to support his conviction of possession of methamphetamine with intent to sell. He also argues that the trial court erred in denying his motion to suppress.

## A. Sufficiency

The standard for appellate review in determining the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have the essential elements of the crime beyond a reasonable doubt.'" *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). The Defendant "must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt" in order to obtain relief on a claim for insufficient evidence. *State v. Perrier*, 536 S.W.3d 388, 408 (Tenn. 2017). Further, because a jury conviction removes a defendant's presumption of innocence and "replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted defendant," who must demonstrate that the evidence is insufficient support the jury's verdict. *Id.*

Appellate courts "will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we reweigh or re-evaluate the evidence." *Id.* (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). The determination of "'[t]he credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)).

At trial, the State was required to prove that the "defendant knowingly … possess[ed] methamphetamine with intent to manufacture, deliver or sell methamphetamine." T.C.A. § 39-17-434(a)(4). Viewing the evidence in the light most favorable to the State, we conclude that the evidence presented at trial was sufficient to

support the Defendant's conviction of possession of over 0.5 grams of methamphetamine with intent to sell. It is undisputed that the methamphetamine found in the truck belonged to the Defendant. The officers testified that the ledger found in the Defendant's hotel room was consistent with someone who was selling drugs rather than purchasing drugs for personal use. Sergeant Gilley testified that when he asked the Defendant if the Defendant was selling drugs, the Defendant responded that "he wasn't doing nothing big." The jury could have inferred that this was an acknowledgement that he sold drugs. "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419. The jury heard and rejected the Defendant's testimony that the methamphetamine was for personal use, and this court will not "reweigh or reevaluate the evidence." *Henley v. State*, 960 S.W.2d, 572, 578-79 (Tenn. 1997). Accordingly, the evidence presented at trial is sufficient to support the Defendant's conviction.

### B. Motion to Suppress

The Defendant filed a motion to suppress the substances found in his truck prior to trial, arguing that he did not voluntarily consent to the search of his truck. Specifically, the Defendant moved to suppress the 8.7 grams of marijuana, the 4.6 grams of methamphetamine, and the digital scales. The Defendant also references items found in the hotel room after the search including the two bottle caps that contained methamphetamine residue, a methamphetamine smoking pipe, and a needle. He maintained that he only consented after the officers informed him that his child would be taken from him if he did not allow the officers to search his truck. At the suppression hearing, Sergeant Gilley and Lieutenant Long testified that the Defendant gave consent to search both his hotel room and his truck. Both officers denied threatening to call the Department of Children's Services if the Defendant did not allow the search of his truck. The Defendant did not call any witnesses to testify at the suppression hearing.

The trial court denied the Defendant's motion to suppress, finding that the Defendant voluntarily consented to the search of his truck. In making its finding, the trial court found the testimony of both Sergeant Gilley and Lieutenant Long to be credible. The trial court analyzed the totality of the circumstances surrounding the search and found that the written document confirmed that the Defendant consented to the search of the hotel room. Additionally, the trial court found that in light of all the other circumstances, the evidence showed that the Defendant consented to the search of his truck. The trial court found that the search was in a public area, that there was no evidence of hostility by the officers, and that the officers explained to the Defendant why they were there. The court stated that "[u]nder those circumstances, the Court finds that

the motion should be denied, that consent was freely, voluntarily, knowingly, intelligently, and personally given" by the Defendant.

"On appeal from the denial of a motion to suppress, we review the trial court's legal conclusions de novo with no presumption of correctness." *State v. Dailey*, 273 S.W.3d 94, 100 (Tenn. 2009) (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). This court defers to the trial court's findings of fact unless the evidence preponderates against such findings. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The appealing party bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *State v. Harts*, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures. "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)). A consensual search is one of these narrowly defined exceptions. *State v. Reynolds*, 504 S.W.3d 283, 306 (Tenn. 2016).

The Defendant contends that that he did not voluntarily consent to the search of his truck. He claims that his statement, as written by Sergeant Gilley, shows that he gave consent to search his hotel room, but the statement makes no mention of a search of his truck; therefore, he asserts that he never gave consent to search his truck. The State argues that the record supports trial court's finding that the Defendant voluntarily consented to the search of his truck.

The question of whether consent was voluntary is determined by the totality of the circumstances surrounding the search. *State v. Cox*, 171 S.W.3d 174, 184 (Tenn. 2005) (citing *Scheneckloth v. Bustamonte*, 412 U.S. 218, 243 (1973)). In determining whether consent was voluntarily given, factors that may be considered include:

1. Time and place of the encounter;
2. Whether the encounter was in a public or secluded place;
3. The number of officers present;
4. The degree of hostility;
5. Whether weapons were displayed;

6. Whether consent was requested; and
7. Whether the counter initiated contact with the police.

*Cox*, 171 S.W.3d at 185 (quoting 79 C.J.S. Searches and Seizures § 119(b) (1995 & Supp. 2004)).

The trial court examined these factors and found that the search occurred in a public place, that there were only two officers present, that there was no indication of hostility, that there was no testimony that the officers displayed their weapons, and that the officers explained to the Defendant that they were there in response to a tip concerning the sale of methamphetamine out of two hotel rooms. The police officers testified that the Defendant gave oral consent and that they did not obtain his consent by threatening to take his child. The Defendant did not testify at the suppression hearing, nor was any evidence presented other than the officers' testimony, which the trial court accredited. We conclude that the evidence does not preponderate against the trial court's findings that the Defendant knowingly and voluntarily consented to the search of his truck. Accordingly, the trial court did not err in denying the Defendant's motion to suppress.

## CONCLUSION

Upon reviewing the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE