# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 7, 2011

## TARREAN V. NUBY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 02-02068-69     Paula Skahan, Judge**

---

**No. W2010-02671-CCA-R3-PC  - Filed November 21, 2011**

---

The petitioner, Tarrean V. Nuby, appeals the denial of his petition for post-conviction relief from his convictions for attempted first degree murder and aggravated robbery, arguing that he received ineffective assistance of both trial and appellate counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Terita M. Hewlett, Memphis, Tennessee, for the appellant, Tarrean V. Nuby.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Corliss Shaw, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The petitioner was convicted by a Shelby County jury of attempted first degree murder and two counts of aggravated robbery and was sentenced by the trial court to an effective term of twenty-two years and six months in the Department of Correction. His convictions were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. See State v. Tarrean Nuby, No. W2005-02900-CCA-R3-CD, 2007 WL 551351, at *1 (Tenn. Crim. App. Feb. 21, 2007), perm. to appeal denied (Tenn. June 18, 2007).

The petitioner's convictions arose out of his participation with Christopher Kirkendoll in the robbery and attempted murder of a Memphis pizza delivery driver. Our direct appeal opinion provides the following summary of the crimes:

David Bruce Dickey, Jr., the victim, testified he was a pizza delivery driver for Pizza Hut in Memphis on November 21, 2001. On that date, he drove in his 1999 red four-door Ford Contour to deliver pizza to a residence on Frayser Boulevard. [The victim] pulled into the driveway of 1425 Frayser Boulevard where an individual was waiting for him. The individual asked how much the pizza would cost and said he would come back with the correct amount of money. Someone came around the house and pushed [the victim] into the carport, and another individual pointed a small silver and black gun at his head and told him to get on the ground. Once [the victim] was on the ground, two men, including the one who first met him in the driveway, rolled him from side to side checking his pockets and taking what they found. During this, the individual with the gun kept it firmly pressed to [the victim's] jaw. After he was robbed, the individual holding the gun pulled it away from [the victim's] head and shot him. After he was shot, they told him not to get up, and they got in [the victim's] car and drove off.

[The victim] identified the [petitioner] as the person with whom he first came in contact and stated the individual who shot him, he came to find out, was named Kirkendoll.

Id.

The petitioner filed a timely *pro se* petition for post-conviction relief on April 3, 2008, which the post-conviction court erroneously dismissed as untimely on May 1, 2008. Thereafter, the petitioner filed an untimely notice of appeal to this court, which was due to his not having received notice of the post-conviction court's dismissal of his petition until approximately five months after the order was entered. We waived the timely filing of the notice of appeal in the interest of justice and, following our review, reversed the dismissal of the petition and remanded the case to the post-conviction court. See Tarrean V. Nuby v. State, No. W2008-02554-CCA-R3-PC, slip op. at 1 (Tenn. Crim. App. Sept. 25, 2009).

Following our remand, the petitioner filed an amended petition through appointed counsel in which he raised claims of ineffective assistance of trial and appellate counsel. Specifically, he alleged that his trial counsel was ineffective for failing to offer any defense proof at trial, for failing to call alibi witness Latonya Churchman to testify at trial, for failing to investigate and subpoena for trial alibi witness Darrell Mackey, Jr., and for coercing him

-2-

into waiving his alibi defense "based upon information otherwise protected by attorney-client privilege that occurred during the course of plea settlement negotiations." He alleged that appellate counsel was ineffective for failing to adequately communicate with him during the appellate process and for failing to sufficiently investigate and raise critical issues on appeal.

At the evidentiary hearing, the petitioner's trial counsel testified that he was licensed to practice law in 1997 and had handled approximately ten to fifteen jury trials, including at least five first degree murder trials, by the time he was appointed to represent the petitioner in January 2004. He said that the petitioner's original counsel was allowed to withdraw from representation after the petitioner, who had agreed to testify against Kirkendoll as part of a plea agreement, took the stand at Kirkendoll's trial and informed the jury that the prosecutor had asked him to lie. The petitioner was indicted for aggravated perjury based on his testimony at Kirkendoll's trial, and trial counsel represented him in the case, which resulted in a conviction in July 2004, as well as in the underlying case, in which the petitioner went to trial in June 2005.

Trial counsel estimated that he met with the petitioner in jail approximately ten times over an eighteen-month period. He said that during their discussions the petitioner at times said he knew "nothing about nothing," at other times asked him to break down the charges for him, and at still other times mentioned the name of Latonya Churchman as an alibi witness. However, when counsel spoke with Churchman, he learned that although she was willing to vouch for the petitioner's whereabouts at about 10:30 on the night of the shooting, she did not know where the petitioner was earlier in the evening when the shooting occurred. Moreover, as time went on, she began to back off her initial story and exhibit an increasing reluctance to testify on the petitioner's behalf, which counsel attributed to her unwillingness to perjure herself at trial. He, therefore, asked the court to withdraw the notice of alibi he had filed for her and chose not to call her as a witness at trial.

In addition, the State informed trial counsel that if he called Churchman or any other alibi witness, it would present rebuttal proof of the petitioner's revelations during plea bargain negotiations with the prosecutor, the prosecutor's investigator, and the petitioner's original counsel, in which the petitioner laid out in great detail the facts of the crime. Counsel explained: "I thought it would be counterproductive to call an alibi witness, and then have this parade of rebuttal proof, each of whom would testify that [the petitioner] had detailed the facts of the offense to them." Counsel said that he believed the petitioner had originally intended to testify against Kirkendoll but became frightened when he had to face him in court and instead perjured himself, which led to his having later formulated the "desperate defense" of the alibi witness, who was not very consistent in her accounts. Counsel stated that he also withdrew a notice of alibi he had filed for Kirkendoll because he realized, after talking to him, that his testimony would not be beneficial to the petitioner's

case. He said he had never heard the name of Darrell Mackey before the day of the post-conviction evidentiary hearing.

Trial counsel further testified that having the petitioner testify was not really a feasible option, both because of his aggravated perjury conviction and the rebuttal proof that was slated to be introduced if he took the stand. He, therefore, had no defense proof to present. He said he did not file any motions seeking to bar the rebuttal testimony of the prosecutor and original defense counsel because he did not know of any basis for doing so. Even in hindsight, he could think of no other evidence he could have presented in the petitioner's defense.

Appellate counsel testified that he was licensed to practice law in 1999 and spent approximately two years with the public defender's office before starting his own criminal defense practice. At the time he was appointed to handle the petitioner's direct appeal, he had filed between ten and fifteen appellate briefs in other cases. He said he reviewed and researched all the issues raised in the petitioner's motion for new trial and chose to raise the only issue that he believed had any real merit, which was whether the evidence was sufficient to sustain the attempted murder conviction. Appellate counsel explained his decision in fairly great detail, at times citing case law to support why he chose not to raise a particular issue on appeal. He said he read the trial transcript several times and saw no plain error in the record. Finally, he testified that he maintained regular contact and communication with the petitioner throughout the appellate process, which included several face-to-face meetings and at least two telephone calls to the prison.

Latonya Churchman testified that on the night of the shooting the petitioner was at her house from about 7:00 or 8:00 p.m. until sometime after 10:30 p.m. She said she informed the petitioner's trial counsel that the petitioner had been at her home during those times. She stated that counsel asked her and her brother, Darrell Mackey, to come to court to testify, but after they had been sitting outside the courtroom for a long time, counsel came out and told them that their testimony was not needed.

The petitioner testified that he was not present at the crime scene and that he never told his trial counsel that he was. Instead, he always insisted that Latonya Churchman and Darrell Mackey could testify that he was at their house at the time of the shooting. The petitioner said that both alibi witnesses showed up for his trial but that trial counsel, for some reason that he never explained, sent them away without testifying. In the next breath, however, the petitioner testified that counsel informed him that it was in his best interest not to use his alibi witnesses because if he did, the State would introduce rebuttal testimony about his plea negotiations, in which he had agreed to testify against his co-defendant in exchange for an eight-year sentence for aggravated robbery and the dismissal of the

-4-

attempted murder charge. He said that, had it not been for counsel's advice, he would not have waived his alibi defense. The petitioner also complained that trial counsel failed to introduce medical evidence about the victim's wound which, he claimed, would have proven that his co-defendant lacked the "intent [to commit] criminal attempt first degree murder."

On August 30, 2010, the post-conviction court entered an order denying the petition for post-conviction relief, finding that the petitioner failed to meet his burden of demonstrating he was denied the effective assistance of trial and appellate counsel. This appeal followed.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The same principles apply in determining the effectiveness of both trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

### III. Allegations of Ineffective Assistance of Trial Counsel

The petitioner contends that trial counsel provided ineffective assistance by failing to present any defense when defense proof existed, by not calling Churchman to testify as an alibi witness at trial, for not investigating and subpoenaing Mackey as an alibi witness at trial, and by coercing him into waiving his alibi defense based on information otherwise protected by attorney-client privilege that he divulged during plea negotiations. The record, however, fully supports the findings and conclusions of the post-conviction court that the petitioner failed to meet his burden of demonstrating that he was denied the effective assistance of trial counsel.

According to trial counsel's testimony, which was obviously accredited by the post-conviction court, Churchman was unable to provide a full alibi when he initially talked to her, as she was unable to account for the petitioner's whereabouts at the time of the actual shooting. Moreover, as time went on, she began to back off even that partial alibi, appearing increasingly reluctant to testify. Because her alibi was so shaky, and the State had announced its intention of presenting rebuttal proof of the petitioner's detailed knowledge of the crimes should either the petitioner or an alibi witness testify, he withdrew the notice of alibi and decided not to call Churchman as a witness at trial.

Counsel also offered reasonable explanations for why he did not call either Kirkendoll or the petitioner as witnesses at trial, testifying that Kirkendoll's testimony would not have been favorable and that having the petitioner testify was not really a viable option, due not only to the State's proposed rebuttal evidence, but also the petitioner's

-6-

aggravated perjury conviction, which occurred before the trial of the case at bar. Furthermore, counsel never heard the name of alleged alibi witness Mackey before the evidentiary hearing. We conclude, therefore, that the petitioner has not shown either a deficiency in counsel's representation based on his failure to call the above witnesses or to present any other defense proof, or that he was prejudiced as a result.

The petitioner additionally alleges that trial counsel provided ineffective assistance by "coercing him" into waiving his alibi defense based on information he divulged during plea negotiations. Specifically, he asserts that counsel could have precluded the proposed rebuttal testimony by filing a pretrial motion, pursuant to Rule 410 of the Tennessee Rules of Evidence,[1] to exclude any statements he made during plea negotiations. In support, he cites State v. Hinton, 42 S.W.3d 113 (Tenn. Crim. App. 2000).

We agree with the State, however, that the petitioner's reliance on Hinton is misplaced. In that case, we held that a defendant's incriminating statement made during plea negotiations should have been suppressed, despite the presence of Miranda warnings, because "[t]he crux of the [S]tate's case consisted of the defendant's statement" and there was no evidence that the defendant had knowingly waived his rights under Tennessee Rule of Evidence 410 and Tennessee Rule of Criminal Procedure 11(e)(6). Id. at 126. The proposed evidence in the case at bar, by contrast, was not intended to be introduced during the State's case-in-chief but instead as rebuttal evidence. We have previously observed that "[a] statement that is inadmissible against a defendant in the [S]tate's case-in-chief because of a Miranda violation may properly be used for impeachment purposes to attack the testifying defendant's credibility." State v. Harts, 7 S.W.3d 78, 85 (Tenn. Crim. App. 1999) (citing Harris v. New York, 401 U.S. 222, 225-26 (1971) and State v. Hopper, 695 S.W.2d 530, 538 (Tenn. Crim. App. 1985)). We have also noted that the United States Supreme

---

[1]Rule 410 of the Tennessee Rules of Evidence provides in pertinent part:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:

. . . .

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. Such a statement is admissible, however, in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Tenn. R. Evid. 410(4).

Court's ruling in <u>Harris</u> provides persuasive authority for allowing the State to impeach a defendant's testimony with the statements he made during plea negotiations. <u>State v. Larry Watson</u>, No. 88, 1988 WL 138849, at *2 (Tenn. Crim. App. Dec. 29, 1988).

In his reply brief, the petitioner concedes that the State could have introduced the rebuttal evidence to attack his credibility had he testified at trial. He asserts, however, that Rule 410 does not authorize the introduction of plea discussions and related statements as rebuttal evidence for non-testifying defendants, which means that he was coerced by trial counsel into waiving his alibi defense witnesses.

As an initial matter, we note that Tennessee Rule of Evidence 410 does not expressly authorize the introduction of plea discussions as rebuttal proof against a testifying defendant, either. We also think that the rationale for allowing such rebuttal evidence in the case of a testifying defendant, which is to prevent the use of unchallenged perjury as a defense, <u>see</u> <u>Harts</u>, 7 S.W.3d at 85 (citing <u>Harris</u>, 401 U.S. at 226), applies by extension to the case of a non-testifying defendant who seeks to introduce, through an alibi witness, evidence that conflicts with his prior statements about the crime. Regardless, the petitioner cannot show that he was prejudiced by counsel's failure to file a motion to suppress rebuttal evidence of his plea negotiations, as counsel's testimony made it clear that his decision not to call Churchman, the only potential alibi witness of which he was aware, was primarily based on the fact that she was not only unable to account for the petitioner's whereabouts at the time of the actual shooting, but also was equivocal in even that partial alibi and appeared, as time went on, increasingly reluctant to testify at all.

### IV. Allegations of Ineffective Assistance of Appellate Counsel

The petitioner contends that appellate counsel was ineffective for failing to sufficiently communicate with the petitioner during the appellate process and for failing to sufficiently investigate and incorporate critical issues on appeal. The record, however, establishes that appellate counsel kept in regular communication with the petitioner, thoroughly reviewed the record and the issues raised in the motion for new trial, and chose the only issue that he believed had any real merit. We conclude, therefore, that the post-conviction court properly found that the petitioner failed to show that he was denied the effective assistance of appellate counsel.

### <u>CONCLUSION</u>

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-

conviction court denying the petition for post-conviction relief.

_____

ALAN E. GLENN, JUDGE